OPINION OF THE COURT
George J. Balbach, J.
The defendant, Samuel Lieberman, an employee of the Dry Harbor Nursing Home, was indicted on March 9, 1977 and charged with one count of conspiracy in the fourth degree and 12 counts of willful violation of the health laws in that he accepted illegal rebates in connection with his duties.
An inspection of the Grand Jury minutes and an order of dismissal are now sought on multiple grounds including:
(1) That the State Hospital Code is unconstitutional;
*739 (2) That a section of the State hospital regulations was unpublished and therefore of no legal effect;
(3) That subdivision 2 of section 12-b of the Public Health Law is inappropriate to the facts of this case;
(4 and 6) That the tape recordings in this case are legally insufficient or improperly sealed;
(7 and 8) That the instructions and evidence to the Grand Jury were similarly improper; and finally
(9A) That the defendant received immunity by virtue of having testified before a New York Grand Jury.
This court will consider defendant’s grounds in inverse order for reasons that will become apparent.
A reading of the Grand Jury minutes establishes that on November 6, 1975 at 10:10 a.m., Samuel Lieberman was called as a witness by the Special State Prosecutor in connection with nursing home investigations. He was duly sworn by the foreman of a Manhattan Grand Jury in the matter of "an investigation of the nursing homes and related entities in the County of New York” and testified at length. Defendant was subsequently called back the same day as a witness and gave additional testimony. Based then on the records before this court, it is clear that defendant’s factual contentions are correct. Samuel Lieberman did appear before a Grand Jury not once but twice and he gave testimony both times.
A review of the minutes shows a representative (and important) portion of such testimony:
"Q — Has anyone ever contacted you in your capacity as Executive Housekeeper and offered you money in order to deal with them as opposed to someone else?
"A — No sir.
"Q — No one has ever offered any kickbacks or anything like that?
"A — No sir.
"Q — Have you heard any rumors about that?
"A — No.
"Q — You have never heard any talk about anything like that?
"A — No sir.
"Q — Not only in your home; I am talking about any home in the industry?
"A — I am only involved in Dry Harbor.
*740 "Q — Who else supplies merchandise to the nursing home? If I, called them vendors, you know what I mean. Who else are vendors to the nursing home?
"A — In housekeeping?
"Q — Well, okay, in housekeeping.
"Q — I have the housekeeper supplier, 'John Doe Company’ [name changed].”
It is defendant’s contention that such testimony granted him immunity pursuant to CPL 190.40. This section reads:
"Section 190.40 Grand jury; witnesses, compulsion of evidence and immunity.
"1. Every witness in a grand jury proceeding must give any evidence legally requested of him regardless of any protest or belief on his part that it may tend to incriminate him.
"2. A witness who gives evidence in a grand jury proceeding receives immunity unless:
"(a) He has effectively waived such immunity pursuant to section 190.45; or
"(b) Such evidence is not responsive to any inquiry and is gratuitously given or volunteered by the witness with knowledge that it is not responsive.
"(c) The evidence given by the witness consists only of books, papers, records or other physical evidence of an enterprise, as defined in subdivision one of section 175.00 of the penal law, the production of which is required by a subpoena duces tecum, and the witness does not possess a privilege against self-incrimination with respect to the production of such evidence. Any further evidence given by the witness entitles the witness to immunity except as provided in subdivisions (a) and (b) of this section.”
The State concedes that the defendant testified but opposes the granting of immunity. The Special Prosecutor argues that it is not merely "relevant” testimony but rather "indictable testimony” which determines immunity. In the case at bar it is maintained that the witness "merely testified as to his duties and affiliations as assistant administrator and executive housekeeper at Dry Harbor Nursing Home”. He did not give "evidence concerning the crime for which he has been indicted” and thus should not receive immunity from prosecution in the instant indictment. In essence the Special Prosecutor interprets the word "evidence” in the statute to mean *741 "indictable evidence”, that is such testimony as would substantially link a defendant to the crimes charged.
 In considering this argument this court notes that the immunity statute passed by the Legislature "intended to reaffirm the traditional New York concept that when a witness is compelled to yield his privilege against self incrimination, he should be granted transactional immunity, i.e., immunity from prosecution for any transaction concerning which he was compelled to give evidence. (People v Ianniello, 21 NY2d 418; People v Tomasello, 21 NY2d 143; Matter of Gold v Menna, 25 NY2d 475”.) (People v McFarlan, 89 Misc 2d 905, 907.) Keeping this legislative intent in mind, an examination of the statute shows no ambiguity or uncertainty. Its wording is clear and understandable. A general rule of construction (McKinney’s Cons Laws of NY, Book 1, Statutes, §76) lays down the principle that "[w]here words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation”. Since these words are plain on their face, this court can find no reason to restrict the word "evidence”. Nor will it read in any limiting implications since section 74 of McKinney’s Statutes states: "a court cannot by implication supply in a statute a provision which is reasonable to suppose the Legislature intended intentionally to omit.” Further, it must be noted that CPL 50.10 (subd 3) also refutes the prosecutor’s interpretation by defining the phrase to "give evidence” as simply "to testify or produce physical evidence”.
An analysis of pertinent cases in this area must start with Counselman v Hitchcock (142 US 547), the first major case to consider the immunity question. There the court stated (p 585): "It is a reasonable construction, we think, of the constitutional provision, that the witness is protected 'from being compelled to disclose the circumstances of his offence, the sources from which, or the means by which, evidence of its commission, or of his connection with it, may be obtained, or made effectual for his connection, without using his answers as direct admissions against him.’ ”
Again, in Maness v Meyers (419 US 449, 461) our highest court pointed out that "This Court has always broadly construed its protection to assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action * * * The protection does not merely encompass evidence which may lead to crimi *742 nal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution.” Thus, it is clear that the Supreme Court favors a broad or liberal interpretation as to what constitutes incriminating testimony.
 A recent New York case in this area, People v McFarlan (89 Misc 2d 905, supra) agrees with the Federal view. In that case the defendant was originally indicted in, October, 1974 by a New York Grand Jury and charged with possession of narcotics. Subsequently, the defendant was called before a second Grand Jury which was independently investigating a homicide. The second Grand Jury had no connection with the previous Grand Jury. During the course of this homicide investigation, the defendant acknowledged that "she sold drugs in the past” and was "busted” the previous June 4. The sole issue in that case was whether the defendant’s acknowledgment of being involved with drugs granted her immunity in the first or past indictment. The court rules that it did. The District Attorney challenged this ruling and advanced the argument that the defendant’s admission was not specific enough to be considered part of any "transaction, matter or thing”. The Appellate Division agreed with the People’s view and reversed the lower court (People v McFarlan, 52 AD2d 112, 114) stating, inter alia, that the defendant’s admissions that she sold drugs in the past did not operate to confer immunity "since the relationship between that statement and the 'transaction, matter or thing’ for which defendant seeks immunity is not a substantial one”. Further, the Appellate Division pointed out (p 114) that "the admission of illegal activity by the defendant did not specifically relate to the crimes charged and immunity, therefore, did not obtain.” The Court of Appeals (42 NY2d 896) reversed the Appellate Division on the opinion of the lower court. Thus, based on the McFarlan ruling, the test in New York presently would seem to be that the relationship between the statement and the transaction could be less than a substantial one. Clearly the testimony must have a connection with the indictable crimes and be relevant to the prosecution of such crimes (Matter of Gold v Menna, 25 NY2d 475). While the defendant in this case did not admit his guilt as to any specific crime, he was questioned and did respond to acts bearing a direct relationship to the transaction for which he is presently *743 being indicted (cf. People v Pardo, 92 Misc 2d 985). Here the witness supplied a valuable element of proof to the People without going so far as to admit guilt. The connection while falling short of substantial is clearly relevant. This being the case the court finds that the defendant’s statements linked him to the vendor known as the "John Doe” company and that such testimony brought him the transactional immunity of the CPL 50.10.
However, this conclusion does not resolve the matter but instead raises a second, and in some respects more perplexing, issue as to the extent of immunity. The indictment in this case represents a continuing investigation over a three-year span and charges the defendant with 13 violations of law during that time. The alleged crimes fall into three chronological periods: 1. The first category deals with acts committed both before and after November 6, 1974 (the date of the defendant’s testimony); 2. The next time span deals with acts committed before the defendant’s Grand Jury testimony; and 3. The final period deals with acts committed after the defendant’s appearance. Because defendant appeared approximately midway during the course of this investigation, the court must now consider the scope of his immunity. The question to be resolved is — does the defendant receive immunity for all the crimes alleged in the indictment or only a partial or restricted one?
The first category, that is mixed acts or acts which occurred both before and after the date of the witness’ testimony, pertains only to count one of the indictment. This count charges the defendant with the crime of conspiracy in the fourth degree and alleges overt acts which commenced in February of 1974 and terminated only with the presentment of the Grand Jury in March, 1977. Since the conspiracy crime was a continuing one, it might be argued that the People can prove their case without presenting any evidence dealing with acts committed before November 6, 1975 and thus need not involve defendant’s testimony. In essence, the People maintain that they can prove the conspiracy without using any evidence derived from the defendant’s testimony, that is sever his evidence. An examination of the law discloses one prior case on point and that is People v Nationwide News Serv. (172 Misc 857). This case also dealt with a conspiracy and the People advanced a similar argument. The Nationwide court rejected this severance theory, pointing out that a continuing *744 conspiracy is in full force and effect until the combination is abandoned (United States v Kissel, 218 US 601). It further ruled (p 859) that the previous testimony given before the date of the defendant’s appearance in that case before the Grand Jury would undoubtedly supply some link in the chain of events necessary to sustain the indictment or that his testimony might have supplied clues "through which evidence pointing to his guilt may have been forced from the testimony of others.”
This court finds cogency in the arguments advanced in the earlier case and also concludes that the elements of proof in the present case are so intermingled that proof of the past acts would invariably enter the picture and contaminate the present acts. For this reason the court feels that the defendant should be granted immunity as to count one of the indictment.
As for the second category of crimes, that is, all those which took place prior to the date of the Grand Jury testimony, it is clear that immunity is extended to them since the witness gave evidence linking himself with these acts. Thus, counts 2 through 8 of the indictment are covered by this category and the witness receives immunity as regards these counts.
The court now turns to the third category, crimes committed after the testimony of the witness. In the case at bar the Special Prosecutor conducted an extended investigation and the final five counts of the indictment refer to acts committed after the Grand Jury appearance. The issue then before the court is, should the defendant be granted immunity for crimes that were not in existence at the time he gave testimony? Can a defendant receive immunity for future crimes?
In considering such a question this court notes that while cases have spoken of "future crimes”, invariably they have meant "future prosecution” that is punishment for acts which occurred before the witness testified or during the course of testimony such as perjury or criminal contempt (see Glickstein v United States, 222 US 139; People v Tomasello, 21 NY2d 143). No case has been cited which suggests that a defendant has a right to commit a future crime based on present Grand Jury immunity. Common sense rebels at the thought of a witness who, because he has testified to one homicide, is granted the right to a second one at the expense of the State. Such a result would be clearly absurd and justify Mr. Micawber’s famous conclusion that "The law is an ass”.
*745 Turning then to the issue, the language of the Supreme Court in Hale v Henkel (201 US 43) is pertinent. The court stated (p 67) in considering the nature of the Fifth Amendment, the following: "The interdiction of the Fifth Amendment operates only where a witness is asked to incriminate himself — in other words, .to give testimony which may possibly expose him to a criminal charge. But if the criminality has already been taken away, the Amendment ceases to apply. The criminality provided against is a present, not a past criminality, which lingers only as a memory and involves no present danger of prosecution. To put an extreme case, a man in his boyhood or youth may have committed acts which the law pronounces criminal, but it would never be asserted that he would thereby be made a criminal for life. It is here that the law steps in and says that if the offense be outlawed or pardoned, or its criminality has been removed by statute, the Amendment ceases to apply.” Reading the language of this case, it would appear that where there can be no present danger of prosecution, there can be no question of immunity. Thus, since it is impossible to prosecute one for an offense that does not exist, today’s testimony should not pardon tomorrow’s crime. Testimony before the Grand Jury does not give future immunity.
The clearest expression of this doctrine, and the logic behind it, was enunciated in United States v Swift (186 F 1002, 1011-1012):
"As to the claim that the immunity is for the future as well as in the past, it may be observed that in Brown v. Walker, supra, the court said:
" 'If, upon the other hand, the object of the provision [the fifth amendment] be to secure the witness against a criminal prosecution which might be aided, directly or indirectly, by his disclosure, then if no such prosecution be possible — in other words, if his testimony operated as a complete pardon for the offense to which it relates — a statute absolutely securing to him such immunity from prosecution would satisfy the demands of the clause in question.’
"The words 'complete pardon for the offense to which it relates’ indicate clearly that there must have been some violation of the law at the time the evidence was given. In Hale v. Henkel, supra, the court said:
" 'But, if the criminality has already been taken away, the amendment ceases to apply. The criminality provided against *746 is a present, not a past, criminality, which lingers only as a memory and involves no danger of prosecution.’
"If the amendment does not apply to a past criminality, which lingers only as a memory, a fortiori it cannot apply to future criminality, not yet conceived in the minds of the parties. In the Counselman Case, supra, the court said:
" 'In view of the constitutional provision, a statutory enactment, to be valid, must afford absolute immunity against future prosecution for the offense to which the question relates.’
"A question put to a witness cannot relate to something which does not exist. As to all crimes committed at the time the information was had from the defendants, there may have been immunity. It cannot be claimed now as to crimes which had not then been committed, or even contemplated. That this is true follows conclusively from the fact that the constitutional privilege guards only against the giving of incriminating evidence. Incriminating evidence cannot be given, unless a crime in fact has been committed.”
Law and logic then support the view that the immunity granted to a Grand Jury witness extends only to present criminality. While the State questions a witness at its own peril in respect to present crimes, it is under no duty to anticipate future ones. A citizen does not possess a right to commit a crime; hence, the State cannot violate such a right.
One final point remains to be considered in connection with this question of future immunity. A reading of the Grand Jury minutes establishes that it was the testimony of the witness which led to the naming of the "John Doe” supply company. This supply company, in turn, issued the illegal rebates for which the defendant now stands indicted. Assuming for the sake of argument that the Special Prosecutor had no other independent source for establishing the identity of this company, could it be argued that it was the defendant’s present testimony which revealed evidence for the future crimes and thus should be suppressed under some application of the fruit of the poisonous tree doctrine? This court thinks not. Immunity is the price the State had paid for the defendant’s testimony. The prosecutor is now entitled to utilize that knowledge in any fashion he deems fit provided it does not violate defendant’s immunity. The questions asked of the witness were not in code and he understood them. His answers were voluntary and his testimony was not secured *747 through unlawful means. He realized that he was giving leads and his remedy was simple — refrain from unlawful acts. Since the information furnished was clearly not obtained through "exploitation of * * * illegality” (Wong Sun v United States, 371 US 471, 488) no injustice has been performed on the defendant. This being the case the information furnished does not fall under the fruit of the poisonous tree doctrine.
Therefore, this court finds that the defendant is not entitled to immunity as to the final five counts of the indictment, that is counts nine through 13, since the acts alleged in these counts took place after he testified before the Grand Jury. They were, in fact, future crimes.
Branch 9A is therefore granted to the extent that counts one through eight are dismissed for the reason the defendant has immunity as indicated above.