THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JOSEPH WILLIAMS, Respondent.

Second Department, July 6, 1981

APPEARANCES OF COUNSEL

*John J. Santucci, District Attorney (Barry A. Schwartz* of counsel), for appellant.

*Peter R. Cooperman* for respondent.

OPINION OF THE COURT

HOPKINS, J. P.

Criminal Term has dismissed the indictment which charged the defendant with manslaughter in the second degree. The dismissal was predicated on the immunity enjoyed by the defendant as the result of his previous testimony before the Grand Jury (see CPL 50.10, subd 3; 190. 40). The issue before us is whether the defendant's testimony has the quality of conferring transactional immunity, thus rendering the prosecution impotent from later charging the defendant with the commission of a crime to which the defendant's testimony directly related.

We conclude that as a result of the defendant's testimony before the Grand Jury, he cannot be prosecuted under the provisions of CPL 50.10 (subd 3) and CPL 190.40, and therefore affirm.

I

In June, 1978 the Grand Jury was investigating the homicide of Delores Taylor. The defendant was called by the District Attorney to testify before the Grand Jury. He did not sign a waiver of immunity, nor was he informed by the Assistant District Attorney presenting the case that he was entitled to counsel or that he might remain silent.

The defendant was then interrogated concerning events of the evening of May 25, 1978 and the morning of May 26, 1978 in which the defendant, his friend Eddy Spann, one John Ford and the deceased figured. The defendant testified in response to the questioning of the Assistant District Attorney as follows:

He and Spann had been visiting a friend. As he and Spann were leaving the friend's apartment, they heard music coming from another apartment occupied by Delores Taylor. Spann rapped on the door and the defendant and Spann were admitted by Delores Taylor, who was dressed only in a top. In the apartment was John Ford, holding a baby.

Delores Taylor offered whiskey to them. Ford then told her to put some clothes on, whereupon Taylor attempted to sit on Ford's knee. Ford rebuffed her. Spann, after talking with Taylor, requested the defendant to go to Spann's apartment and get the latter's dog. The defendant returned with the dog to find Spann and Ford fighting in the hallway. Ford brandished a knife which Spann struck from his hand with a cane. Spann threw the knife to the defendant who in turn gave it to Taylor.

The defendant tried to break up the fight. Ford ran downstairs, followed by Spann, the defendant, and the dog. When Spann and the defendant came back to the apartment, they asked Taylor whether she would be safe and she replied that she would lock her door. Spann and the defendant then left at about 12:50 A.M. The defendant

later went with his brother after departing from Spann, who became ill.

Taylor was subseqeuntly discovered dead in her apartment. As a result of the proceedings before the Grand Jury, John Ford was indicted for murder. Later the defendant made statements to the prosecutor implicating himself in the homicide. Ford's indictment was dismissed on motion of the prosecution, and the defendant was indicted for manslaughter in the second degree.

## II

The defendant moved to dismiss the indictment on the ground that his testimony before the Grand Jury immunized him from prosecution under the statutory prescriptions (CPL 50.10, subd 3; CPL 190.40). Criminal Term granted the motion, finding that his testimony had "a connection with the indictable crime" and was "relevant to the prosecution of such crime". Criminal Term concluded that although the defendant, in his testimony before the Grand Jury, had not admitted guilt to any specific crime, his testimony bore a direct relationship to the transaction under his indictment and supplied a valuable element of proof to the prosecution, albeit short of furnishing a substantial connection between him and Delores Taylor.

The People appeal, contending that under the statutory standard, the defendant's testimony before the Grand Jury must establish a substantial connection to the transaction under investigation before immunity is acquired by the defendant. The test, argues the People, is not the mere relevance of the testimony; otherwise, unforeseen immunity would be bestowed on a witness who testifies only as to an aspect of the transaction; and consequently, the statutes should be interpreted to confer immunity on a witness before a Grand Jury solely where his testimony demonstrates a "substantial connection" to the crime under inquiry, citing *Heike v United States* (227 US 131) and *People v La Bello* (24 NY2d 598).

## III

CPL 50.10 defines immunity as follows:

"1. 'Immunity.' A person who has been a witness in a

legal proceeding, and who cannot, except as otherwise provided in this subdivision, be convicted of any offense or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he gave evidence therein, possesses 'immunity' from any such conviction, penalty or forfeiture. A person who possesses such immunity may nevertheless be convicted of perjury as a result of having given false testimony in such legal proceeding, and may be convicted of or adjudged in contempt as a result of having contumaciously refused to give evidence therein.

"2. 'Legal proceeding' means a proceeding in or before any court or grand jury, or before any body, agency or person authorized by law to conduct the same and to administer the oath or to cause it to be administered.

"3. 'Give evidence' means to testify or produce physical evidence."

CPL 190.40 focuses particularly on the testimony of a witness before a Grand Jury, reading, so far as pertinent, as follows:

"1. Every witness in a grand jury proceeding must give any evidence legally requested of him regardless of any protest or belief on his part that it may tend to incriminate him.

"2. A witness who gives evidence in a grand jury proceeding receives immunity unless:

"(a) He has effectively waived such immunity pursuant to section 190.45; or

"(b) Such evidence is not responsive to any inquiry and is gratuitously given or volunteered by the witness with knowledge that it is not responsive."

The language of the statutes, construed as a whole, appears clear: absent a waiver, a witness before the Grand Jury responding directly to questioning legally addressed to him, cannot be convicted of an offense for any transaction concerning which he gave testimony.* Nevertheless, in

---

* It should be said that perjury by the witness in the testimony is of course shielded from immunity (CPL 50.10, subd 1).

giving force to the language, we must view it in its historical continuity and the gloss introduced by judicial opinion *(Matter of Horchler,* 37 AD2d 28, 31, affd 30 NY2d 725). We must bear in mind, too, that the statutes must be interpreted liberally in order that the individual's rights are adequately guarded *(Matter of Anonymous v Arkwright,* 5 AD2d 792, 793).

IV

Our Constitution, in providing a privilege against self incrimination, does not in precise definition lay out the boundaries of the privilege, nor the rules already engendered in the common law (NY Const, art I, § 6; 1942 Report of NY Law Rev Comm, pp 369-390). The device of compelling testimony by granting immunity, under a statute, relating to specific areas of investigation, arose early in New York, even before the enactment of the Revised Statutes of 1830 (1942 Report of NY Law Rev Comm, pp 391-392). But the immunity granted had to be "adequate to relieve the witness of his peril" *(Matter of Doyle,* 257 NY 244, 254). That is to say, the immunity had to be "coterminous with what otherwise would have been the privilege of the person concerned" *(Heike v United States,* 227 US 131, 142, *supra;* see, also, *Counselman v Hitchcock,* 142 US 547, 585).

Nevertheless, the prolixity and uneven content of the immunity statutes prompted the recommendation of the Law Revision Commission that certain uniform provisions be introduced to prevent an automatic grant of immunity, without, for example, the assertion of the privilege by the witness before testifying (1942 Report of NY Law Rev Comm, pp 354-355). Although that recommendation did not immediately bear fruition, section 2447 of the former Penal Law (later former Code Crim Pro, § 619-c) was subsequently enacted which required that the witness claim his privilege and prescribed other procedural conditions before immunity was conferred on the witness.

A witness called before a Grand Jury prior to the enactment of section 2447 had occupied a special status and had enjoyed the privilege of immunity from prosecution

derived from his testimony without the need of a verbal claim of the privilege (People v De Feo, 308 NY 595, 602-603; People v Steuding, 6 NY2d 214, 216-217). The question accordingly became significant whether a Grand Jury witness fell within the provisions of section 2447 and, later, section 619-c. In People v Steuding (supra, pp 216-217) it was held that a prospective defendant or one who is a target of an investigation was not affected by section 2447, and continued to be protected by the constitutional privilege. A scholar in the field has said that the decisions construing these provisions had left "this highly complex area of law * * * in a most cloudy state" (Denzer, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 190.40, p 125). Judge DENZER concluded (id., p 125) that the essence of the decisions was as follows: if a person who is a defendant, possible defendant or "target" of a Grand Jury investigation, testifies before the Grand Jury, no evidence could be subsequently used against him, despite his failure to assert the privilege. Moreover, Judge DENZER pointed out (id., p 126) that the twin statutes in reality served little purpose as applied to a witness before the Grand Jury. Because of these factors of confusion in the law and lack of utility, the approach of section 2447 and 619-c was not followed with respect to Grand Jury witnesses in the enactment of the Criminal Procedure Law. That view is sustained by the case law.

"In this State a witness who testifies before a Grand Jury automatically receives immunity, except in certain circumstances not applicable here (CPL 190.40, subd 2). By statute this immunity not only protects the witness from subsequent use of his testimony, as is required by the Federal Constitution (Kastigar v United States, 406 US 441), but also absolves him from all criminal liability, penalty or forfeiture for any 'transaction * * * concerning which he gave evidence' (CPL 50.10, subd 1)" (People v Rappaport, 47 NY2d 308, 313). Hence, the law has returned to the posture enduring before the changes wrought by sections 2447 and 619-c, and we may profitably examine the cases then controlling, dealing with the privilege of a Grand Jury witness against self incrimination.

## V

Put into perspective by the contentions of the parties on this appeal, our inquiry must be addressed to the scope of the privilege—or to frame it more concretely, the effect on the privilege by the nature of the testimony elicited by the prosecutor before the Grand Jury. In the appeal before us manifestly the defendant's testimony lies between two extremes that readily suggest themselves—that is, the defendant's testimony before the Grand Jury, on the one hand, is not the equivalent of a confession of a crime, nor, on the other hand, is it so unrelated to the crime as to be completely foreign to the indictment against the defendant.

We are not without signposts from the past which point the direction for our decision. Chief Judge CARDOZO wrote that "[i]t is enough, to wake the privilege into life, that there is a reasonable possibility of prosecution, and that the testimony, though falling short of proving the crime in its entirety, will prove some part or feature of it, will *tend* to a conviction when combined with proof of other circumstances which others may supply" *(Matter of Doyle,* 257 NY 244, 256, *supra)*. Earlier cases had alluded to the metaphor of the testimony constituting a "link" in the "chain of facts" against defendant (see, e.g., *People ex rel. Taylor v Forbes,* 143 NY 219, 228-231; *People v Priori,* 164 NY 459, 466; *People ex rel. Lewisohn v O'Brien,* 176 NY 253, 264), a metaphor still in use in cases subsequent to *Doyle* (see, e.g., *People ex rel. Coyle v Truesdell,* 259 App Div 282, 286; *People v Nationwide News Serv.,* 172 Misc 857).

The degree to which the privilege has been enforced is illustrated in *People ex rel. Coyle v Truesdell (supra)*. There the defendants were grocers charged with conspiracy to bribe a public relief officer by giving the latter 50% of the value of relief orders placed with the stores of the defendants. Called before the Grand Jury, one of the defendants, after stating his address, was asked if that was his store and residence, and he answered "Residence and store both." This, the court said (p 286), "may very well be a link in the chain of proof against him."

We think that the reference in the cases to the testimony as reflecting a link in the chain of facts against the witness

is but an expressive means of describing the tests expounded by Chief Judge CARDOZO in *Doyle (supra)*. In this, as in other instances in which the law imposes a standard to measure behavior, it is the context of the circumstances which ultimately governs; the generality of the rule yields to the weight of the facts, once they are found.

VI

We assume, for nothing in the record is to the contrary, that the defendant was called before the Grand Jury and interrogated and thus placed within the wings of CPL 190.40, not by the error or indifference of the prosecutor. John Ford, for all that appears, was the prime suspect of the investigation, and the defendant's testimony put Ford at the scene of the crime near the time it was committed and furnished Ford with a motive. However, by the same token, the defendant's testimony inculpates himself by his admission that he too was present at the same time. The defendant's testimony, in answer to questions of the prosecutor, goes further by indicating that the victim of the homicide remained on friendly terms with the defendant after the incident in which Ford quarrelled with the victim and fought with Spann, and that she had said that she would lock her door after Spann and the defendant left, thus leading to an inference that her door might be unlocked only to one with whom she was friendly, such as the defendant.

The constitutional privilege and the benefits of CPL 50.10 and 190.40 do not depend on the attitude or intentions of the prosecutor. Neither do they depend on the effect of the witness' testimony in exposing him, without more, to conviction for the commission of a crime. Perhaps, as a result of the privilege and the plain language of the statutory protection, a heightened sense of caution on the part of the prosecutor is commended before witnesses are examined before a Grand Jury, lest the witness receive transactional immunity through his testimony from liability for the crime under investigation. Nevertheless, that is a judgment determined by the Legislature, after presumably balancing the detriments to the community with the rights of the individual in maintaining constitutional liberty.

We should not indulge in rarified refinements and overly

subtle shades of difference between tests of incriminatory testimony resulting in immunity bottomed on whether the testimony elicited before the Grand Jury was "relevant" or "substantial" or "material" (cf. *People v Lieberman*, 94 Misc 2d 737; *People v Gerald*, 91 Misc 2d 509; *Matter of Jaime T.*, 96 Misc 2d 173). These linguistic aids are merely descriptive labels and not rigid models; the true test is, as Chief Judge CARDOZO said in *Matter of Doyle* (257 NY 244, 256, *supra*), whether "the testimony * * * will prove some part or feature of it [the crime], will *tend* to a conviction when combined with proof of other circumstances which others may supply." The word "tends" thus is used in the light of "helps" or "contributes" to the witness' incrimination for the crime concerning which he testified. Here in that sense, the defendant's testimony, we think, tends to incriminate him of the crime concerning which he testified (see, also, *People v McFarlan*, 89 Misc 2d 905, revd 52 AD2d 112, revd 42 NY2d 896 on opn at Trial Term).

We therefore affirm.

LAZER, GIBBONS and COHALAN, JJ., concur.

Order of the Supreme Court, Queens County, dated July 26, 1979, affirmed.