OPINION OF THE COURT
Victor M. Ort, J.
By notice of motion dated May 13, 1997, defendant Mark Davis moves to dismiss the indictment pursuant to CPL 210.20 (1) (d) on the ground that defendant has immunity with respect to the offense charged pursuant to CPL 50.20 and/or 190.40. The People’s answering papers and defendant’s responding papers were submitted to the court on May 31, 1997. For the reasons which follow, the motion to dismiss is denied.
The indictment herein charges defendant with the crimes of burglary in the third degree and reckless endangerment in the second degree as well as the traffic infractions of speeding and unlicensed operation of a motor vehicle. Defendant elected to testify before the Grand Jury and signed and swore to a waiver of immunity. Defendant was represented by attorney Timothy Aldridge in the Grand Jury. Prior to executing the waiver, defendant was informed by the prosecutor who presented the case that the Grand Jury was investigating an incident which occurred on August 15, 1996 between 9:00 and 11:00 p.m. at the Casual Male Shop, 320 West Sunrise Highway in Valley Stream. Defendant was informed that he was a possible target of the investigation and that the crimes for which he was being investigated included the crime of burglary. Defendant was informed that before testifying before the Grand Jury, he was required to sign a "waiver of immunity”. Defendant was advised he had the right to remain silent and the right to talk to *360 a lawyer before giving evidence or before signing the waiver of immunity. Defendant acknowledged that his attorney had explained the waiver to him and that he understood its terms. He further acknowledged his understanding that if the waiver of immunity was signed, his testimony could be used against him.
Defendant then testified before the Grand Jury, offering his explanation as to how he came into possession of the property which was stolen in the burglary. In an apparent effort to show bias on the part of Officer Scalone, the arresting officer, defendant made mention of a prior incident in May of 1996 when Officer Scalone had previously arrested defendant. The prosecutor interrupted defendant’s testimony concerning that incident, and the following colloquy outside the Grand Jury’s presence ensued:
"prosecutor: He’s not going to get immunity on this case in here.
"defendant: I’m not looking for immunity.” (Transcript, at 120.)
The parties then returned to the Grand Jury, and the prosecutor instructed the grand jurors: "Ladies and gentlemen, Mr. Davis has waived his immunity with regard to the events of August 15. I’m going to ask you to disregard any testimony with regard to this other incident about him [sic] being arrested, okay, at this point. I’m not going to let him continue further on in that vein of questioning. He has not waived his immunity with regard to that case, and I’m not going to permit any questioning about that.” (Transcript, at 121.) The prosecutor also offered defendant the opportunity to waive immunity and testify concerning the prior matter, but defendant declined to do so.
Subsequently in the midst of defendant’s testimony, as the result of a juror’s questioning, came the exchange which forms the predicate of the present motion:
"juror: Your car, have you been driving that car for a long time?
"the defendant: Every day since March 16.
"q: Let me ask you this question. Have you had a driver’s license since March 16?
"a: I had a hardship hearing. I had access to drive to work.
"q: Did you ever drive any other time besides driving back and forth to work?
"a: Wouldn’t that be a crime I’m admitting to?
*361 "q: I’ll give you immunity.
"a: Yes, I have.
"mr. delle: Yes, sir?
"juror: What I was trying to kind of get to is that this officer knew this car, and know that—
"the defendant: Yes, he does.
"mr. delle: Let me stop there because the question is improper. But I think we can get to it and we’ll recall Officer Scalone for you if you like.
"q: Had Officer Scalone ever stopped you in this same vehicle before?
"a: Yes, he has.
"mr. delle: And so does that satisfy your question, sir?
"juror: That satisfies it.” (Transcript, at 144-145.)
Defendant’s claim, as eloquently presented in his papers, is to the effect that the unlimited language "I’ll give you immunity” so tainted defendant’s waiver of immunity that it resulted in a grant of transactional immunity to. him which must be held to extend to each of the four counts of the indictment. In other words, defendant argues that the quoted language rendered defendant’s waiver a nullity and created transactional immunity for any area discussed by Mr. Davis before this Grand Jury.
The People argue that the grant of immunity must be interpreted and limited within the context in which it was given. They argue that the grant was given solely to enable defendant to give his fullest exculpatory version of the events and should not be construed as a blanket grant of immunity to the defendant for all testimony he had given before the Grand Jury. Thus, this case presents the question of whether a grant of immunity as to a collateral matter must be held to render nugatory the validity of a previously given waiver.
CPL 190.40 (2) provides in pertinent part:
"A witness who gives evidence in a grand jury proceeding receives immunity unless:
"(a) He has effectively waived such immunity pursuant to section 190.45”. CPL 190.45 (1) provides that, "A waiver of immunity is a written instrument subscribed by a person who is or is about to become a witness in a grand jury proceeding, stipulating that he waives his privilege against self-incrimination and any possible or prospective immunity to which he would otherwise *362 become entitled * ■* * as a result of giving evidence in such proceeding.”
CPL 190.45 also sets forth the procedural requisites of an effective waiver of immunity. For example, a waiver of immunity must be sworn to before the Grand Jury conducting the proceeding (CPL 190.45 [2]), and a person who is called by the People as a witness in a Grand Jury proceeding and requested by the prosecutor to waive immunity has a right to confer with counsel before deciding whether to do so. (CPL 190.45 [3].) Likewise, a defendant who is the subject of the Grand Jury proceeding has a similar right. (People v Chapman, 69 NY2d 497 [1987].) If the witness desires to avail himself of the right to counsel, he must be accorded a reasonable time to obtain and confer with an attorney, and the prosecutor must inform the witness of these rights before obtaining a waiver of immunity. (Supra.)
Since all of the procedural requisites for a valid waiver of immunity were satisfied, defendant effectively waived immunity prior to commencing his testimony.[1] As noted above, defendant argues that the limited grant of immunity, pertaining to unlicensed motor vehicle operation at times other than the date of the burglary in question, (1) had the effect of "vitiating” his original waiver, so as to confer transactional immunity, and (2) caused him to "misunderstand” the scope of immunity conferred and thus violated his Fifth Amendment rights. The court finds these arguments to be without merit.
The court notes as a threshold matter that the granting of partial immunity to a defendant testifying before the Grand Jury is not improper. The immunity provided by CPL 190.40 is a transactional immunity and purely of statutory origin. (People v Williams, 81 AD2d 418 [2d Dept 1981].) CPL 50.10 (1) defines "immunity” in terms of a person’s inability to "be convicted of any offense * * * for or on account of any transaction, matter or thing concerning which he gave evidence” in a legal proceeding. Although the immunity conferred must be " 'as broad in scope as the privilege it replaces’ ” (People v Masiello, 28 NY2d 287, 293 [1971]), CPL 50.10’s definition of immunity with respect to testimony concerning a "transaction, matter or thing” suggests that immunity may be conferred on a transaction-specific basis. Furthermore, CPL 190.45 (4) *363 provides for a written agreement between the prosecutor and a Grand Jury witness that interrogation will be limited to certain specific subjects and the waiver of immunity will be restricted accordingly. The statutory provision for a limited waiver of immunity further confirms that a partial grant of immunity to a testifying defendant is permissible.
The People claim that the grant of immunity was only a partial one and that the grant was given "to allow defendant to present his version of events.” This claim is buttressed by the transcript which clearly shows that the immunity was given in the context of cross-examination and in connection with a juror’s question.[2] The grant of immunity was issued when defendant expressed unwillingness to answer the prosecutor’s clarifying question concerning uncharged incidents of defendant’s driving while unlicensed. As a result, it must be held that the immunity granted at that time was a partial limited grant of immunity which, as noted above, was not improper. Moreover, a prospective defendant’s right to testify encompasses only those matters relevant to the case before the Grand Jury. (CPL 190.50 [5] [b]; People v Smith, 87 NY2d 715 [1996].) Thus, defendant had no right to testify concerning any uncharged incidents of his driving while unlicensed. Nor did defendant waive his privilege against self-incrimination as to the other incidents of unlicensed operation. While defendant expressly waived his privilege against self-incrimination in the Grand Jury, the waiver of the privilege against self-incrimination certainly did not exceed the scope of defendant’s right to testify. (People v Smith, supra.) That being so, defendant retained his privilege against self-incrimination as to any other incidents and the only way for the prosecutor to obtain testimony as to the unrelated motor vehicle infractions was to offer defendant immunity. Putting aside the wisdom of this arrangement, the partial grant of immunity was in all respects proper and had no effect on the validity of the previously given waiver of immunity as far as the pending charges were concerned.
Defendant also claims that he misunderstood the scope of the immunity which was granted. In this regard, the court notes that CPL 190.45 does not require a prosecutor to inform the witness as to the scope of the immunity conferred. Never *364 theless, "fundamental fairness” requires that prior to being held in contempt for refusing to answer, the witness must " 'be advised that he may not be prosecuted criminally concerning any transaction about which he might be questioned’ (People v Rappaport, 47 NY2d 308, 313 [1979], quoting People v Masiello, 28 NY2d 287, 291 [1971], supra.) In Masiello defendant was charged with contempt for refusing to answer questions because he thought he had received an immunity narrower than that which was actually conferred. In juxtaposition thereto, Davis claims that his Fifth Amendment rights were violated when he answered questions based on the mistaken belief that he had received an immunity broader than that purportedly granted by the prosecutor. While facially appealing, this argument lacks substance and is belied by the record.
This is so because it was clear from the context of the questioning and the statements made by the prosecutor on the record that immunity was being granted only as to unlicensed operation at times other than the date in question. The prosecutor, originally concerned that defendant should not receive immunity as to the previous matter, initially stated that defendant had not waived his immunity as to that matter and would not be permitted to testify further about it lest he be granted immunity. However, the prosecutor subsequently abandoned that concern and in the opinion of the court, granted immunity only as to the other instances of unlicensed operation. Defendant, who was represented by counsel in the Grand Jury, could not have misunderstood the prosecutor.
Moreover, even if it could somehow be construed that defendant had misinterpreted the prosecutor’s remarks, a misunderstanding on defendant’s part could not result in a Fifth Amendment violation. By waiving the right to immunity, a testifying defendant before the Grand Jury necessarily gives up the Fifth Amendment privilege against self-incrimination. (People v Smith, 87 NY2d 715 [1996], supra; see also, CPL 190.50 [5] [b], which specifically provides that "[u]pon giving such evidence, he is subject to examination by the people”.) Inasmuch as defendant had validly waived his Fifth Amendment rights, both expressly and by operation of his waiver of immunity, he could not unilaterally reassert his Fifth Amendment rights as to the pending charges. Since defendant was required to continue answering questions as to the pending charges, he cannot now claim that his entire testimony was given in reliance on the offer of partial immunity. Thus, there was no Fifth Amendment violation. Finally, even if there had been a Fifth Amendment *365 violation, the proper remedy for that violation would be not the granting of transactional immunity but suppression of any testimony given after the partial immunity grant, i.e., use immunity as to the subsequent testimony.
For the above-stated reasons defendant’s motion to dismiss the indictment must in all respects be denied.

. In People v Chapman (supra), defendant’s waiver of immunity was void ab initio because it was obtained in violation of his right to counsel. In the present case by contrast, the court finds that defendant’s waiver of immunity was in all respects valid.

. Indeed, as the People recognize in their opposing affirmation, the partial grant of immunity "came well after he testified concerning every facet of his version of events.” (Affidavit of Assistant District Attorney LaRocca, at 3.)