[685 NYS2d 110]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v SEAN McKENNA and WILLIAM BONANNI, Respondents.

Third Department, December 30, 1998

APPEARANCES OF COUNSEL

*John E. Dorfman, Special Prosecutor,* Albany, for appellant.
*Thomas J. Neidl,* Albany, for Sean McKenna, respondent.
*O'Connell & Aronowitz,* Albany (*Michael L. Koenig* of counsel), for William Bonanni, respondent.

## OPINION OF THE COURT

MERCURE, J.

This appeal presents a question that tests the limit of New York's law of transactional immunity: whether a defendant's testimony, which is not incriminatory and which, if it were to be presented at trial, would be presented in defense of the charge, can cloak defendant with immunity by virtue of the fortuity that defendant gave the details of the expected defense as testimony before a Grand Jury.

Defendants are police officers employed by the City of Albany. In the early morning hours of October 31, 1997 defendants were off duty and were patronizing the Partridge Pub on Madison Avenue in Albany. During the course of a game of darts, an altercation erupted between defendant William Bonanni and an opponent, Jermaine Henderson. Although accounts differ as to the ensuing events, there is no question that defendants assisted in physically subduing Henderson, who was arrested and placed in handcuffs at the Partridge Pub. Henderson was thereafter transported in the back of a police vehicle to the Division Two police station, located at 126 Arch Street in Albany, arriving at approximately 2:00 A.M.; he was accompanied on that trip by defendants, who sat in the front seat of the police vehicle with the driver. Henderson subsequently made accusations that, upon arriving at the police station's garage area and while he was restrained in handcuffs, he was left alone with defendants, who proceeded to strike him with their fists, knock him to the floor and repeatedly kick him in the head and body, causing physical injury.

Citing to a potential conflict of interest, the District Attorney sought and obtained an order of County Court appointing a

Special Prosecutor to investigate the allegations of police brutality against defendants. On December 8, 1997, the Special Prosecutor presented evidence to a Grand Jury, which ultimately returned the indictment at issue here, charging defendants with assault in the second degree and assault in the third degree, both alleged to have occurred on October 31, 1997 at approximately 2:00 A.M. at 126 Arch Street. On December 9, 1997, the District Attorney presented its case against Henderson to a different Grand Jury (hereinafter the Henderson Grand Jury). Defendants were both called as witnesses. They were neither asked to nor did they execute a waiver of immunity. Both testified concerning the events that transpired at the Partridge Pub, including the injuries inflicted upon Henderson while he was being physically subdued and arrested. Their testimony did not in any way touch upon the events that took place at the police garage.

Following their arraignment, each defendant moved to dismiss the indictment against him upon the ground that he had obtained transactional immunity by virtue of his testimony before the Henderson Grand Jury. Citing to defendants' respective accounts of the altercation at the Partridge Pub and the manner in which Henderson was injured while being subdued there, and reasoning that defendants' testimony provided a motive for the alleged subsequent assault upon Henderson at the police garage, County Court concluded that immunity had been absolutely conferred. The Special Prosecutor appeals County Court's ensuing order dismissing the indictment against defendants. Because we conclude that County Court erred in its determination that defendants' testimony before the Henderson Grand Jury immunized them from prosecution on the present indictment, we reverse County Court's order and reinstate the indictment.

Pursuant to CPL 50.10 and 190.40 (2), in the absence of a waiver of immunity, a person who gives direct responses to questions legally put to him before a Grand Jury "cannot * * * be convicted of any offense * * * for or on account of any transaction, matter or thing concerning which he gave evidence therein" (CPL 50.10 [1]; *see, People v Williams*, 81 AD2d 418, 421, *affd* 56 NY2d 916). In order to confer full transactional immunity, the Grand Jury testimony need not be "the equivalent of a confession of the crime related to [the witness's] interrogation" (*Matter of Gelinas v Barrett*, 147 AD2d 293, 295); rather, it suffices that the testimony "will prove some part or feature of it, will *tend* to a conviction when combined with

proof of other circumstances which others may supply" (*Matter of Doyle*, 257 NY 244, 256 [emphasis in original]; *see, Matter of Gelinas v Barrett, supra,* at 295; *People v Williams, supra,* at 424). "Nonetheless, the link between the crime charged and the accused's prior testimony must be real and of some substantiality, not merely trifling, imaginary or speculative" (*Matter of Gelinas v Barrett, supra,* at 295). At a minimum, the defendant's prior testimony must be "relevant and admissible to prove some element of the People's direct case on the crime charged" (*id.,* at 295). Finally, in determining whether there is a sufficient nexus between the prior testimony and the subject crime, "it is 'the context of the circumstances which ultimately governs' " (*People v Feerick,* 241 AD2d 126, 139, quoting *People v Williams, supra,* at 425).

Applying the foregoing legal principles to the facts of this case, we first reject County Court's premise that because defendants' testimony concerning the melee at the Partridge Pub was probative as to their motive for later brutalizing Henderson, it would "tend to a conviction" of the crimes charged in the indictment. The simple fact is that motive is not an element of either of the crimes charged in the indictment. To the contrary, considering that Henderson's anticipated testimony would provide compelling direct evidence of guilt and that intent to commit the crime of assault may be easily inferred from the commission of the act itself (*see, People v Alvino,* 71 NY2d 233, 242; *Matter of Gelinas v Barrett, supra,* at 295-296), evidence of motive would appear to be irrelevant to the prosecution against defendants (*see, People v Ryan,* 240 AD2d 775, 776, *lv denied* 90 NY2d 910; *but see, People v Chase,* 85 NY2d 493, 502; *People v Mees,* 47 NY2d 997, 998 [both involving homicide prosecutions lacking eyewitness evidence]). Furthermore, as properly contended by the Special Prosecutor, the specific Grand Jury testimony cited to by defendants in support of their motion to dismiss the indictment and relied upon by County Court in its determination of the motion is not probative on the issue of motive. In fact, because it merely tends to establish that Henderson's injuries were received prior to his arrival at the police garage, that evidence is not incriminatory (*see, People v Weisman,* 231 AD2d 131, 135, *lv denied* 90 NY2d 1015; *People v Petgen,* 92 AD2d 693, 694); if anything, it tends to exculpate defendants.

We are also unpersuaded by the argument that the events occurring at the Partridge Pub are somehow inextricably intertwined with the alleged assault at the police garage such that

the latter cannot be competently established without reference to the former. In our view, far too much is made of the temporal and geographic proximity between the two events and insufficient consideration is given to the "context of the circumstances" separating them (*People v Williams, supra*, at 425; *see, People v Feerick*, 241 AD2d 126, 139, *supra*). The fracas at the Partridge Pub was a spontaneous, reciprocal confrontation between private individuals in a public place, while the Grand Jury evidence against defendants portrays a calculated attack at a sequestered site by individuals acting under the cloak of official authority against a handcuffed detainee. Had the two been separated by 250 miles and five hours instead of the claimed two miles and one-half hour, the substantial difference in the circumstances underlying the events would have been no greater (*see, People v Feerick, supra*, at 139). In addition, the "continuity" argument fails to account for the fact that Henderson's immobilization, arrest and removal from the scene represents a clear and significant break in the action such as to segregate the events of the Partridge Pub from those of the police garage.

In our view, the mere fact that the altercation at the Partridge Pub and the alleged assault in the police garage took place on the same morning and involved the same parties is insufficient to transform the subject matter of defendants' testimony before the Henderson Grand Jury into the very "transaction, matter or thing" for which they were indicted. Nor can it be said that their conduct at the police garage was in any way the "topic" discussed before the Henderson Grand Jury (*see, People v Chin*, 67 NY2d 22, 33, n 4; *People v Feerick, supra*, at 139). We therefore conclude that defendants' testimony before the Henderson Grand Jury did not immunize them from prosecution on the present indictment against them. Defendants' remaining contentions have been considered and found to be lacking in merit.

CARDONA, P. J., WHITE, SPAIN and GRAFFEO, JJ., concur.

Ordered that the order is reversed, on the law, motion denied and indictment reinstated.