Breitel, J.
In a prosecution for criminal contempt as a crime, the issue is whether a purported grant of immunity was ineffectual to base a conviction for contempt for refusal to testify because the notice to the witness of the grant provided only for testimonial immunity and not for full transactional immunity.
Defendant, a witness in an organized crime investigation, was indicted on 91 counts of criminal contempt in the third degree. He had refused to answer 91 questions put to him after the Grand *289 Jury had voted to give him immunity. After a nonjury trial defendant was convicted of one count of criminal contempt and sentenced to one year’s imprisonment. The Appellate Division affirmed, two Justices dissenting.
On January 17, 1969, defendant appeared as a witness before a Bronx County Grand Jury, and was informed of the nature of the investigation. Upon claiming his privilege against self incrimination, the Grand Jury voted to grant him immunity under section 619-c of the Code of Criminal Procedure. The statute provides that a grand jury may grant a witness immunity, that the scope of the immunity is transactional, and that “ [iImmunity shall not be conferred upon any person except in accordance with the provisions of this section ” (Matter of Gold v. Menna, 25 N Y 2d 475, 481).
The Assistant District Attorney in giving notice to the witness of the Grand Jury’s action stated: “ I would like to advise you at this time that the Grand Jury and Foreman of the Grand Jury has voted to grant you immunity pursuant to section 619C of the Code of Criminal Procedure. Section 619C of the Code of Criminal Procedure is that section within the purview of the State of New York that affords witnesses immunity if given by competent authority, the competent authority in this particular case is this Grand Jury. The Grand Jury can afford you immunity in cases relating — determining as to whether or not there has been a conspiracy to violate any of the laws of the State of New York. I want to further apprise you sir, if you are asked any questions and you are directed to give answers by the Grand Jury, any such answers — any evidence obtained or the answers themselves can not be used against you for prosecution within the State of New York pursuant to the provisions of Section 619C ”. After consulting with his lawyer, the witness returned to the Grand Jury and continued to claim his privilege. The following exchange occurred between the prosecutor and the witness:
“ Q. Now prior to these two questions which were asked of you, Mr. Botker stated to you that immunity was granted to you by this Grand Jury as to questions which were asked of you; subsequent to his asking the questions you were asked whether you understand and you said not completely, did you then leave this room and confer with your attorney? A. Yes.
*290 “ Q. And did he [the witness’ attorney] explain to you what Mr: Bother stated concerning the immunity which is granted to you by this Grand Jury in the presence of Mr. Bother? A. Yes.
“ Q. And you do understand, do you not sir, that you have immunity as from prosecution as to each and every question or your answers to each and every question that is put to you with regard to this inquiry being conducted by this Grand Jury, do you understand that? A. Yes, sir.’ ’
The witness persisted in his claim of privilege, however, and was excused. He returned almost a month later, on February 14, and again declined to answer, claiming his privilege.
The trial court found that defendant intentionally refused to answer after immunity had been granted. The Appellate Division conjectured that the witness had not been misled by the explanation of the scope of immunity. There is neither allegation nor finding of bad faith on the part of the prosecutor.
The holding in People v. De Feo (308 N. Y. 595) requires that the judgment be reversed. In that case the Grand Jury attempted to confer immunity upon the witness.. Instead of granting the broad immunity provided by the statute, the foreman limited the grant to the crimes of bribery and conspiracy. This court concluded that since the scope of the immunity conferred was not commensurate with the witness’ privilege, and the statute is not otherwise self-executing, the conviction for criminal contempt must be reversed. (See People v. Tomasello, 21 N Y 2d 143, for a limited overruling of the De Feo case, not relevant here.)
In the instant case, after the Grand Jury had voted statutory immunity, the witness was recalled to the Grand Jury room. The prosecutors, in giving notice of the grant to the' witness, limited its scope to testimonial immunity. It would appear to be of limited practical meaning and of doubtful statutory significance whether the scope of immunity is limited by the Grand Jury foreman with the District Attorney’s acquiescence, as in the Be Feo case, or by the prosecutor alone. The result in either event is the failure to confer an immunity coextensive with the witness’ privilege. In either case the statute provided that immunity could be conferred only as prescribed, and in either case the statute cannot be read to provide an immunity greater than that of which the witness has been advised. This limita *291 tion on the reading of the statute follows simply because the statute, it has been held, is not self-executing. The statement in the De Feo case is equally appropriate here: “ True it is that section 2447 is designed as a complete immunity statute, but the immunity it contemplates is not operative until conferred by the Grand Jury or some other duly authorized agency mentioned in the statute. Here the immunity attempted to be conferred by the Grand Jury was incomplete, with the result that defendant was being compelled to give testimony in violation of his fundamental right against self incrimination. That being so, no proceeding for contempt may be predicated thereon.” (308 N. Y., at p. 604).
There is involved something more than a technical rule. Fundamental fairness required, and it is the rule, that the witness be advised that he has been granted immunity in displacement of the privilege against self incrimination (People v. Franzese, 16 A D 2d 804, 805, affd. 12 N Y 2d 1039 ; Matter of Grand Jury [Gioffi], 10 A D 2d 425, 436, affd. 8 N Y 2d 220, 225; cf. Matter of Spector v. Allen, 281 N. Y. 251, 259). In advising the witness that he has immunity a blind or oblique reference is not enough (People v. Franzese, supra). At the very least, the cases suggest, the witness must be advised that he may not be prosecuted criminally concerning any transaction about which he might be questioned. Fundamental fairness also suggests that a witness, who is also a potential criminal defendant, should not be misadvised concerning the scope of immunity if the grant of immunity has been amplified or explained in any way.
The requirement of a full and fair notice of the grant of immunity, without extended explanatory amplification beyond the distinction between transactional and testimonial immunity, is well established. Arguably, some courts have gone further and have seemed to require that the immunity be explained, but in the ordinary case, especially with witnesses represented and advised by a lawyer, this is an excessive requirement. In People v. Brayer (6 A D 2d 437) the Grand Jury conferred immunity on the witness “ for any crime he might be questioned about in this inquiry.” The Assistant District Attorney, however, then proceeded to confuse the grant in language which might have limited the scope of immunity to the crimes of bribery or conspiracy. The court stated: “ A witness before the Grand *292 Jury, where he cannot be represented by counsel * * * should be fully and fairly informed as to the extent of the protection afforded by the .statute., We conclude that the instructions of the prosecutor in this proceeding fall far short of this requirement ” (id., at p. 440). The statement that the witness be “ fully and fairly informed as to the extent of the protection afforded ” was repeated in People v. Franzese (16 A D 2d 804, 805, affd. 12 N Y 2d 1039, supra) and Matter of Grand Jury (Cioffi) (10 A D 2d 425, 436, affd. 8 N Y 2d 220, supra). (Cf. Matter of Koota v. Bonanno, 52 Misc 2d 748, 758; see, generally, Ann., Self-Incrimination Before Grand Jury, 38 ALB 2d 225, §12.)
The problem of possible confusion despite the apparently plain meaning of section 619-c is not remote. This court in People v. La Bello (24 N Y 2d 598), by a closely divided vote, held that witnesses purportedly granted immunity did not receive transactional immunity under the statute. True, the La Bello case was shortly thereafter overruled in Matter of Gold v. Menna (25 N Y 2d 475, supra). Indeed, it was on that overruling and the stipulation of the parties that the Supreme Court found it unnecessary to consider whether transactional immunity was required to satisfy the rule in Counselman v. Hitchcock (142 U. S. 547) and dismissed the writ of certiorari in Piccirillo v. New York (400 U. S. 548). Consequently, it is important that an official purporting to confer immunity must not misstate the scope of immunity as he views it, regardless of the fact that the witness or his lawyer may feel that the official advice is wrong as a matter of law. Moreover, if the official is not to be required, if he speaks at all, to describe correctly the scope of immunity, it does not seem fair that the witness or his lawyer should be held to a better knowledge than his whatever the fact.
In two cases the United States Supreme Court has indicated that if any statement is made as to the witness’ privilege against self incrimination or immunity from prosecution, it must be both plain and correct. >
La Raley v. Ohio (360 U. S. 423) the court reversed the contempt convictions of witnesses who had claimed their privilege before a legislative commission. The convictions were based on a statutory automatic grant of transactional immunity. The *293 witnesses, however, were relying on the repeated assertions of the commission members that they could claim their privilege against self incrimination. The Supreme Court termed this “the most indefensible sort of entrapment ” analogizing it to conflicting or vague criminal statutes (id., at p. 438). The court dismissed as irrelevant the contentions that the commissioners were not intentionally deceitful and that the witnesses would have been recalcitrant even if a proper explanation had been given (id., at p. 439).
More relevant is Stevens v. Marks (383 U. S. 234, revg. 22 A D 2d 683, mot. for lv. to app. den. 15 N Y 2d 483, involving a summary contempt conviction). The Appellate Division had held that, even if a waiver of immunity were invalid, as the witness argued, section 381 of the old Penal Law had automatically conferred immunity upon the witness and required him to testify (22 A D 2d 683, 684, supra). Reversing the conviction, the court wrote: “ [T]he State may not substitute for the privilege against self-incrimination an intricate scheme for conferring immunity and thereafter hold in contempt those who fail fully to perceive its subtleties. A witness has, we think, a constitutional right to stand on the privilege against self-incrimination until it has been fairly demonstrated to him that an immunity, as broad in scope as the privilege it replaces, is available and applicable to him.” (383 TJ. S. 234, 246, supra). In point was the concluding footnote in which the court deemed irrelevant a suggestion that the case be remanded to find if the witness had been misled. “ A State must affirmatively demonstrate to the witness that a valid immunity from prosecution is his before it may hold him in contempt for refusing to answer questions that would otherwise be incriminating ” (id., at p. 246).
In concluding that a witness may not be told that he is receiving an immunity less than the statute requires, it is necessarily implied that whether he or his lawyer are actually misled by the advice is of no consequence. The witness is not obliged to measure his chances on a legal joust with the official granting immunity or the prosecutor. Nor is it material whether the witness would not have testified even if granted immunity as prescribed by the statute (Raley v. Ohio, 360 U. S. 423, 439, supra). As stated earlier, at the very least, the witness who is receiving immunity should be advised that he may not be prosecuted crimi *294 natty concerning any transaction about which he might be questioned. On the other hand, it is equally clear that he may not be misadvised concerning the scope of immunity by any incorrect elaboration however sincerely expressed.
Accordingly, the judgment of conviction should be reversed and the indictment dismissed.