OPINION OF THE COURT
Wachtler, J.
The defendant has moved to dismiss an indictment charging him with criminal contempt in the first degree (Penal Law, § 215.51) for allegedly giving evasive answers while testifying before a Grand Jury under a grant of immunity. The Supreme Court, New York County, granted the motion but the Appellate Division, First Department, reversed and reinstated the indictment. The defendant appeals.
The question is whether a Grand Jury witness who has been granted immunity and warned concerning evasive contempt must later be readvised or "contemporaneously” warned by the Grand Jury, the prosecutor or the court that the answers he is giving are evasive and thus may constitute criminal contempt. The Appellate Divisions which have considered the question have apparently established inconsistent rules (compare People v Cutrone, 50 AD2d 838, app dsmd 40 NY2d 988, with People v Didio, 60 AD2d 978; People v Rappaport, 60 AD2d 565).
The defendant is an auctioneer who had been assigned to sell certain property involved in a matrimonial action. In 1976 he was called to appear as a witness before a Grand Jury *311 which was investigating a complaint that the matrimonial action had been corruptly influenced by the husband or persons acting on his behalf. The defendant testified before the Grand Jury on three occasions: July 13, 14 and 23.
At the defendant’s first appearance the District Attorney advised him, on the record, of the nature of the investigation and also informed him that although he would receive immunity he could still be prosecuted for perjury or contempt committed while testifying before the Grand Jury. The prosecutor further stated that contempt could be committed in two ways: (1) by expressly refusing to answer proper questions or (2) "by giving a response to a legal and proper interrogatory that is so evasive, so equivocal, so conspicuously unbelievable and patently false as to be the same thing as saying I’m not going to answer.” Finally the prosecutor gave the defendant an example of evasive contempt* and permitted him to consult with counsel after which the defendant stated — and reiterated on each occasion that he appeared before the Grand Jury — that he had no questions concerning his status as an "immunized witness” and was prepared to answer questions.
During his second appearance before the Grand Jury the defendant was questioned about a conversation he had with an individual who was allegedly acquainted with the husband in the matrimonial action. The defendant testified that this individual had stated that he and the Justice presiding at the matrimonial action were "friends” but the defendant denied that "anything more” had been said about the relationship. At that point he was again reminded of his obligations as an "immunized witness” and was warned that he could be prosecuted for contempt if he gave evasive answers. The defendant however did not alter his testimony, nor was he indicted for contempt.
At his final appearance the defendant was asked whether he had told anyone that the referee who had been appointed in *312 the matrimonial action "kicked back” 60% of his fees to persons who were responsible for his appointment. The defendant responded that he "may have” but he could not "attest” to it. When asked who he told, the defendant said that he "may have” told the wife in the matrimonial action, but he stated "I can’t even specifically say I said that.”
The prosecutor then informed the defendant of the importance of this inquiry, which was conceded by the defendant, and repeated the question in various forms. For instance, he asked the defendant whether he recalled telling this to anyone "within the past two months”; whether he recalled mentioning this to the wife in the matrimonial action in the presence of another named individual and whether he stated that the "kick back” would go to a designated political organization. The defendant, however, repeatedly stated that he could not "recall saying it” and would not "attest to it one way or another if I said it or not.” After pursuing other subjects the prosecutor returned to this inquiry, but the defendant continued to deny any recollection of having made the statement.
The defendant was indicted for criminal contempt. The indictment states that "On July 23, 1976, upon being asked whether he had told her [the wife in the matrimonial action] that the referee kicked back monies to a political clubhouse, the defendant contumaciously and unlawfully refused to answer the legal and proper interrogatories in that the defendant gave equivocal, evasive, conspicuously unbelievable and patently false answers”.
On motion by the defendant the trial court dismissed the indictment relying on People v Cutrone (50 AD2d 838, supra) which states that a witness must "be warned that his continued recalcitrance in answering proper questions would expose him to charges of criminal contempt.” Here the court noted that the defendant had received prior warnings, but none during his final appearance and, although he gave "patently evasive replies to certain inquiries” on that occasion "neither the district attorney nor the foreman interrupted to direct him to answer responsively, nor was he brought before the court to be properly admonished and advised.” The court concluded that "[u]nder the rationale of Cutrone, it would seem that a warning, to be effective, must be delivered, not only before a witness first begins to testify, but also at a time when he still has an opportunity to cure his unresponsiveness; *313 that is, contemporaneously with the questioning which elicited the evasive answers.”
The Appellate Division reversed holding that the prior warnings, coupled with the repeated questions on July 23 were sufficient to apprise the defendant of his vulnerability to a charge of evasive contempt. The court also noted that "If we were to adopt a rule that required the prosecution to warn the witness every time an otherwise unresponsive answer was made, the witness might, quite rightly, claim harassment.”
In this State a witness who testifies before a Grand Jury automatically receives immunity, except in certain circumstances not applicable here (CPL 190.40, subd 2). By statute this immunity not only protects the witness from subsequent use of his testimony, as is required by the Federal Constitution (Kastigar v United States, 406 US 441), but also absolves him from all criminal liability, penalty or forfeiture for any "transaction * * * concerning which he gave evidence” (CPL 50.10, subd 1). The statute provides, however, that the immunity does not extend to perjury or contempt committed while testifying before the Grand Jury (CPL 50.10, subd 1). And "[t]o be guilty of contempt the witness need not flatly refuse to answer the questions put to him; false and evasive profession of an inability to recall, which amounts to no answer at all, is punishable as criminal contempt” (People v Ianniello, 36 NY2d 137, 142; see, also, People ex rel. Valenti v McCloskey, 6 NY2d 390).
We have held that "fundamental fairness” requires that the witness be informed of the extent of the immunity conferred by the statute (People v Masiello, 28 NY2d 287, 291; People v Mulligan, 29 NY2d 20; People v Tramunti, 29 NY2d 28). "At the very least * * * the witness must be advised that he may not be prosecuted criminally concerning any transaction about which he might be questioned” (People v Masiello, supra, p 291). And although it may appear to be obvious that a sworn witness who has been granted immunity must testify truthfully and, perhaps less obvious, answer all lawful questions, the statute expressly provides, and the witness should be informed, that he will not be immune from prosecution for perjury if he lies, or for contempt if he refuses to answer or gives evasive replies. This should not require an extended explanation (see, e.g., People v Masiello, supra, pp 291, 292), nor should the prosecutor be required to repeat the admoni *314 tion, or have the court direct an answer, every time the witness’ testimony becomes vague or evasive.
The holding in the Cutrone case, that the witness must be contemporaneously warned that he is courting contempt, is not supported by the cases cited in the opinion (Matter of Second Additional Grand Jury of County of Kings v Cirillo, 16 AD2d 605; Matter of Foster v Hastings, 263 NY 311; People v Ianniello, 21 NY2d 418). The court apparently confused the requirement that a Grand Jury witness be fairly advised of the extent of his immunity, with the special requirements of summary contempt proceedings. In the summary proceedings, of course, the witness must be brought before the court and directed to answer before he may be held in contempt (Matter of Second Additional Grand Jury of County of Kings v Cirillo, supra; Matter of Foster v Hastings, supra). This, however, is not a prerequisite to a charge of criminal contempt (see Penal Law, § 215.51) although we have noted that taking the witness before the court may reduce stalling tactics and expedite the proceeding (People v Ianniello, 21 NY2d 418, 425, supra). Indeed in the Ianniello case the indictment was sustained (21 NY2d 418) and the conviction for criminal contempt upheld (36 NY2d 137) despite the fact that the defendant had never been brought before the court and directed to give a more responsive answer.
Resort to the court, particularly through summary contempt proceedings, has always been considered an optional remedy. An admonition or direction from the court or the prosecutor may, in some cases, persuade the witness to give a more responsive answer but it is not necessary to put the witness on notice when, as here, he had been fairly, indeed generously, informed of the extent of his immunity and his continuing liability to criminal prosecution if he answers evasively. Of course even when the witness has been fairly warned at the outset the prosecutor may not thereafter attempt to trap the witness into giving confusing or evasive replies (cf. People v Tyler, 46 NY2d 251; People v Pomerantz, 46 NY2d 240; People v Schenkman, 46 NY2d 232). But in this case it cannot be said that the witness was caught in a "contempt trap” in view of the prosecutor’s careful reframing and repetition of the questions and his representation, acknowledged by the witness, that the inquiry was important to the matter under investigation (cf. People v Tyler, supra; People v Pomerantz, supra; People v Schenkman, supra).
*315 Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Fuchsberg concur with Judge Wachtler.
Order affirmed.

 "Q. Let me give you an example. Let’s assume in the context of this investigation it were a legal and proper question for me to ask you did you get married last week. And let’s assume that the witness to whom that question was addressed said, maybe yes, maybe no. It’s possible I got married last week, and indeed it is probable I got married last week but I don’t remember. That type of response to that type of question may subject that witness to prosecution for the crime of criminal contempt because as I am sure you’ll agree that is so evasive, so equivocal and so conspicuously false that it is the same thing as saying I am not going to answer that. Now, do you understand that?
"A. Yes, I do.”