In the Matter of JOHN A. MATT, SR., Petitioner, v JAMES L. LAROCCA, as Commissioner of the New York State Department of Transportation, Respondent.

Third Department, May 15, 1986

## APPEARANCES OF COUNSEL

*Hinman, Straub, Pigors & Manning, P. C. (William F. Sheehan* of counsel), for petitioner.

*Robert Abrams, Attorney-General (John Q. Driscoll* and *William J. Kogan* of counsel), for respondent.

## OPINION OF THE COURT

MIKOLL, J.

This matter arose from an investigation of alleged mismanagement and misconduct in section 4 of the Department of Transportation's Waterways Division, which was supervised by petitioner. At the initial stage of the investigation and before charges were formally brought, petitioner answered questions posed to him by his superiors regarding the inquiry. On February 28, 1984, petitioner was suspended for 30 days and concomitantly served with charges and specifications pursuant to Civil Service Law § 75, which, *inter alia,* contained an allegation that his breach of supervisory responsibility constituted a violation of the Penal Law. Petitioner also became the target of a criminal investigation conducted by the Oneida County District Attorney stemming from the same events. The investigation lasted from February 28, 1984 to October 17, 1984. Petitioner demanded a hearing in the disciplinary proceeding.

Instead of a hearing, petitioner was requested to submit to an examination under oath pursuant to Public Officers Law § 61. When petitioner refused to attend, a subpoena was then issued in April 1984 pursuant to Public Officers Law § 61 directing him to appear and testify under oath and to bring with him a work diary that he kept. Petitioner once again refused to appear. A court order pursuant to CPLR 2308 (b)

was secured compelling petitioner's compliance with the subpoena. On August 14, 1984, petitioner appeared but, due to the pending criminal investigation, invoked his 5th Amendment right against self-incrimination and refused to answer questions or to submit his diary. During the interrogation, petitioner was advised that his refusal to answer would be considered insubordination. Petitioner was not informed at any time that if he answered, he was entitled to immunity by operation of law from any subsequent criminal prosecution based on any answers he gave. When petitioner failed to answer questions or produce his diary, additional charges of insubordination were preferred against him on October 2, 1984.

Petitioner again demanded a hearing on all disciplinary charges. Respondent advised petitioner that a hearing would be held only on the insubordination charges dated October 2, 1984. After a hearing, petitioner was found guilty of those charges and a 60-day suspension was recommended by the hearing officer. Respondent adopted the hearing officer's findings of insubordination but declined to adopt the recommended penalty, deciding instead to discharge petitioner from service. Respondent held that petitioner, had he chosen to answer the questions, would have been cloaked with immunity and that his refusal to cooperate despite such immunity constituted insubordination warranting dismissal.

Petitioner challenges the proceedings on the ground that since respondent failed to advise him that immunity would attach to his responses by operation of law, his dismissal was in derogation of the constitutional protection against compelled self-incrimination (US Const 5th Amend; NY Const, art I, § 6) and the proceedings against him were, therefore, void. We concur.

When a public employee is compelled to answer potentially incriminating questions relating to his work, he is automatically cloaked with transactional immunity under New York law. An employee should be accurately and adequately apprised of the immunity conferred in return for answering potentially incriminating work-related questions as a matter of fundamental fairness (see, People v Masiello, 28 NY2d 287, 291; see also, CPL 50.20 [2] [b] [ii]). Respondent attempted to compel petitioner's answers under threat of charging him with insubordination. Petitioner was not advised that if he answered, transactional immunity would attach by operation of law to his testimony. Under such circumstances, petitioner

was entitled to assert his constitutional privilege in the hearing conducted pursuant to Public Officers Law § 61 *(see, Kastigar v United States,* 406 US 441, 444-445) without fear of dismissal *(see, Gardner v Broderick,* 392 US 273).

Where immunity is conferred by the State, the State cannot penalize the assertion of the constitutional privilege against self-incrimination. We conclude that an individual can stand on his right against self-incrimination until it is made clear to him that he will receive immunity. The record discloses that petitioner was aware of the criminal investigation being conducted into the matters which were the subject of the examination conducted in August 1984. He was thus entitled to rely on his 5th Amendment prerogatives until such time as he was informed of the grant of immunity *(see, People v Rappaport,* 47 NY2d 308, 313). Petitioner's early cooperation in the matter is to be noted. We find his subsequent refusal to answer questions under oath as not contumacious but rather an understandable attempt to defend himself by the exercise of constitutionally protected rights.

YESAWICH, JR., J. (dissenting). We respectfully dissent.

Had the State discharged petitioner for refusing to waive his privilege against self-incrimination, the appropriateness of an annulment would be clear *(see, Gardner v Broderick,* 392 US 273). Such an attempt by the government to displace his 5th Amendment privilege would have activated an obligation on its part to advise the witness of the immunity conferred on his answers *(see, People v Masiello,* 28 NY2d 287, 291).

But this case differs from *People v Masiello (supra)* in two fundamental respects. First, unlike situations where a Grand Jury has discretion to determine whether immunity is to be granted, and the scope thereof, the immunity conferred here attached automatically by operation of law. Neither the State investigators nor counsel representing the Department of Transportation had any power to alter the breadth of that immunity, the sweep of which was as readily discoverable by petitioner or his attorney as by the State investigators. Furthermore, it is not without significance in this regard that petitioner's refusal to testify was not brought about by a sudden and unanticipated incident, but was the culmination of a long, adversarial process so that petitioner had ample opportunity to explore the implications of invoking his constitutional privilege.

The second and even more compelling reason why investiga-

tors were not obliged to define the extensity of petitioner's immunity is that this case does not even involve a displacement of petitioner's privilege against self-incrimination. Rather, the State, quite legitimately, terminated the services of one enjoying a public trust for refusing to account for his activities *(see, People v Avant,* 33 NY2d 265, 271; *see also, Gardner v Broderick, supra).* They asked questions, received no answers, and warned accurately that continued silence would subject petitioner to punishment for insubordination.

Petitioner may have been forced to choose between termination and self-incrimination; that, however, is wholly permissible *(see, Gardner v Broderick, supra; People v Avant, supra).* Resort to the threat of termination as a means of coercing petitioner to waive his privilege against self-incrimination would have been impermissible, but that course was not followed. Accordingly, we would confirm the administrative determination.

MAIN, J. P., and HARVEY, J., concur with MIKOLL, J.; YESAWICH, JR., and LEVINE, JJ., dissent and vote to confirm in an opinion by YESAWICH, JR., J.

Determination annulled, with costs, petition granted, and respondent is directed to reinstate petitioner to his former position with back pay and all other benefits lost.