OPINION OF THE COURT
Alexander, J.
Petitioner, a supervisory employee with the Waterways Division of the Department of Transportation where he had been employed for 34 years, was dismissed in November 1984 *157 for refusing to answer questions directly relating to the performance of his official duties. In early 1984, the Department commenced an initial investigation apparently in response to reports of misconduct involving the unauthorized absence of employees in petitioner’s section and the use of State property and facilities for the personal benefit of employees under petitioner’s supervision. In the early stages of this investigation, petitioner cooperated by submitting to an interview by his superiors and answering numerous questions. Following this interview, petitioner was served with disciplinary charges pursuant to Civil Service Law § 75, alleging several breaches of his supervisory responsibilities as well as violations of various sections of the Penal Law. At that time, petitioner was suspended for 30 days.
As a result of the Department turning over information related to these charges, petitioner also became the target of a criminal investigation conducted by the Oneida County District Attorney’s office. It does not appear, however, that petitioner was ever questioned by the District Attorney’s office in connection with the criminal investigation.
Before a hearing was held on petitioner’s disciplinary charges, the Commissioner of Transportation instituted an investigation of the misconduct in petitioner’s division pursuant to section 61 of the Public Officers Law and requested that petitioner appear to testify under oath as to matters under his jurisdiction. Petitioner refused. The Commissioner thereafter served him with a subpoena duces tecum requiring him to appear and be examined under oath and to produce a diary maintained by him during the time periods relevant to the misconduct (Public Officers Law § 61). When petitioner again refused, apparently on advice of counsel, a court order compelling his appearance was obtained. Although petitioner appeared with counsel in compliance with that court order, he did not produce his work-related diary. Moreover, he refused to answer questions pertaining to his duties as supervisor, and on the advice of counsel, repeatedly invoked his Fifth Amendment privilege against self-incrimination. Notwithstanding that he was told that a refusal to answer questions in the face of a direct departmental order would be considered insubordination,[1] petitioner persisted in refusing to answer questions *158 that directly related to the performance of his duties as a supervisory employee. Petitioner was not informed by the Commissioner, or the Commissioner’s counsel at the section 61 proceeding, that he was entitled by operation of law to immunity from the use of his answers in any subsequent criminal prosecution.
New charges of insubordination were preferred against petitioner as a result of his failure to respond to questions and his failure to produce his diary. At a hearing held on those additional charges only, petitioner contended that because the criminal investigation was still pending, and because he had not been offered immunity from prosecution should he answer the questions posed at the section 61 proceeding, he invoked— on his counsel’s advice — his privilege against self-incrimination. The Hearing Officer concluded that, notwithstanding petitioner’s claim that he had acted on counsel’s advice, petitioner had willfully refused to answer questions and to produce his diary and that disciplinary action is permitted for the willful refusal to answer pertinent questions — even in the face of self-incrimination. He recommended a two-month suspension without pay. The Commissioner accepted the Hearing Officer’s determination, but rejected the recommended sanction and instead ordered petitioner discharged, finding that he "had the benefit of constitutionally sufficient use immunity” and "must bear the responsibility for his action in thwarting the Department’s orderly process of investigation and administration of the State’s business”.
Thereafter, petitioner instituted this article 78 proceeding challenging the Commissioner’s determination. He asserted that his discharge violated his constitutionally guaranteed right against self-incrimination, that the finding of willful misconduct is not supported by the record, and that the penalty of dismissal after 34 years of faithful and competent service is so disproportionate as to be shocking to one’s sense of fairness (see, Matter of Pell v Board of Educ., 34 NY2d 222, 233).
Addressing only the issue of whether petitioner was entitled to notice of the automatic receipt of immunity, a majority at the Appellate Division, in purported reliance on our decision *159 in People v Masiello (28 NY2d 287), granted the petition.[2] The majority held that "[a]n employee should be accurately and adequately apprised of the immunity conferred in return for answering potentially incriminating work-related questions as a matter of fundamental fairness” (Matter of Matt v Larocca, 117 AD2d 151, 153). Two Justices dissented, finding Masiello inapposite since here "the immunity conferred * * * attached automatically by operation of law.” (Matter of Matt v Larocca, 117 AD2d, at 154.) We now reverse.
It would of course offend the guarantee against self-incrimination to require a public servant to answer questions — even those relating to the performance of such servant’s official duties — upon the threat of dismissal, and to make use of the incriminating statements in a subsequent criminal prosecution (People v Avant, 33 NY2d 265, 271; see, Lefkowitz v Turley, 414 US 70, 78-79; Gardner v Broderick, 392 US 273, 276-277; Garrity v New Jersey, 385 US 493, 500; Uniformed Sanitation Men Assn. v Commissioner of Sanitation, 426 F2d 619, 624, cert denied 406 US 961). Indeed, we have held that answers " 'elicited upon the threat of the loss of employment are compelled and inadmissible in evidence’ ” (People v Avant, 33 NY2d, at 271, supra, quoting Lefkowitz v Turley, 414 US 70, 85, supra; see, Shales v Leach, 119 AD2d 990). The Supreme Court has held that when a public employee is compelled to answer questions or face removal upon refusing to do so, the responses are cloaked with immunity automatically, and neither the compelled statements nor their fruits may thereafter be used against the employee in a subsequent criminal prosecution (see, Lefkowitz v Turley, 414 US 70, 78-79, supra; Gardner v Broderick, 392 US 273, 276-277, supra; Garrity v New Jersey, 385 US 493, 500, supra; see also, People v Avant, 33 NY2d 265, 271, supra). The resulting immunity that attaches when a witness is ordered to answer such questions, therefore, flows directly from the Constitution, attaches by operation of law, and is not subject to the discretion of the employer.
It is settled, however, that the State "may compel any person enjoying a public trust to account for his activities and may terminate his services if he refuses to answer relevant *160 questions, or furnishes information indicating that he is no longer entitled to public confidence” (People v Avant, 33 NY 2d 265, 271, supra; see also, Gardner v Broderick, 392 US 273, supra; Uniformed Sanitation Men Assn. v Commissioner of Sanitation, 426 F2d 619, supra; Shales v Leach, 119 AD2d 990, supra). Public employees, charged with a public trust, do not have an absolute right to refuse to account for their official actions and at the same time retain their employment. "To require a public body to continue to keep an officer or employee who refuses to answer pertinent questions concerning his official conduct, although assured of protection against use of his answers or their fruits in any criminal prosecution, would push the constitutional protection beyond its language, its history or any conceivable purpose of the framers of the Bill of Rights” (Uniformed Sanitation Men Assn. v Commissioner of Sanitation, 426 F2d 619, 626, supra). As the Supreme Court observed in Gardner v Broderick (392 US 273, 278, supra), where a public servant (there a policeman) refuses "to answer questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself * * * the privilege against self-incrimination would not [be] a bar to his dismissal”.
Thus, what is proscribed as unconstitutional is to condition public employment upon a waiver of the privilege against self-incrimination (Gardner v Broderick, 392 US 273, 278, supra). Hence, a public employer may not demand that its employee waive immunity in exchange for continued employment, and may not dismiss that employee for refusing to do so (Gardner v Broderick, 392 US 273, 278, supra). Here petitioner does not contend that he was ordered to waive his right to immunity. Rather, he argues that at the time of the Public Officers Law § 61 proceeding, he was unaware that he would be entitled to immunity automatically upon answering the questions posed. Thus, although petitioner now concedes in his brief to us that immunity would have attached to his compelled answers by operation of law, he nevertheless argues that, as a matter of "fundamental fairness”, he should have been explicitly advised of this immunity, and that the burden was upon the Commissioner to assure him that his answers would not be used against him in the criminal prosecution. Finally, petitioner maintains, because he was not so advised, his resulting *161 dismissal was in violation of his privilege against self-incrimination, citing People v Masiello (28 NY2d 287, supra).
Petitioner, however, misapplies our holding in Masiello (28 NY2d 287, supra). There, the issue was whether a purported grant of immunity to a witness who appeared before a Grand Jury but refused to testify, was a sufficient foundation upon which to base a criminal contempt conviction. The witness had refused to testify notwithstanding having been notified that the Grand Jury had voted, under section 619-c of the former Code of Criminal Procedure, to confer immunity. The notice given to the witness provided for only testimonial or "use” immunity, however, and not the full transactional immunity afforded by the statute. The witness therefore would have proceeded to testify under the misconception that the scope of the immunity he received was less than that to which he was actually entitled by statute. We held that the witness could not thereafter be prosecuted for refusing to testify under those circumstances because "fundamental fairness” required that a witness not be misadvised — indeed that a witness be accurately informed — concerning the scope of immunity conferred by a Grand Jury (People v Masiello, 28 NY2d 287, 291, supra). Thus, Masiello held only that a witness appearing before a Grand Jury must be apprised of the extent of the immunity conferred by statute before a criminal contempt conviction may be had for the witness’s refusal to testify (see also, People v Rappaport, 47 NY2d 308, 313).
The circumstances here are very different from those in Masiello. Petitioner did not appear before a Grand Jury investigating criminal charges; rather, his appearance was at a civil proceeding convened to investigate disciplinary charges of work-related misconduct. He was neither requested to waive his privilege against self-incrimination, nor was he faced with a possible criminal contempt conviction for refusing to testify; he stood only to be dismissed from his employment on charges of insubordination should he refuse to answer the questions posed by his employer. These questions specifically related to the performance of petitioner’s official duties: wrongfully permitting an employee to be paid for time spent doing outside work for private individuals; approving time sheets he knew to be inaccurate; and allowing his subordinates to use State-owned materials and equipment for their personal benefit. Moreover, unlike Masiello where the scope of the immunity conferred depended upon the discretionary action of the Grand Jury, here the immunity attached auto *162 matically by operation of law. Indeed, the immunity protecting petitioner flows directly from the Constitution, and neither the Commissioner, nor counsel representing the Commissioner at the investigatory proceeding, had the power either to confer the immunity or to define or alter its breadth.
These critical distinctions persuade us that Masiello does not require the result urged by petitioner, and the State was not obligated to inform petitioner that immunity attached before ordering him to answer questions. As the Commissioner’s representative at the investigatory proceeding did not have the power to confer immunity, or to modify the immunity to which petitioner was entitled, there is no basis for concluding that he nonetheless had an affirmative obligation to inform petitioner of the automatic attachment of immunity. It is true that the State is required to inform a witness appearing before a Grand Jury of the fact that immunity will be received, even though, under current law, such witnesses are conferred transactional immunity automatically by operation of law (see, CPL 190.40; People v Rappaport, 47 NY2d 308, 313, supra). The consequences, however, of refusing to testify before a Grand Jury — criminal prosecution for contempt — are more serious than those of refusing to answer questions in a Public Officers Law § 61 proceeding — dismissal from public employment. Furthermore, a witness testifying before a Grand Jury ordinarily does not have a right to have an attorney present, which is a crucial factor underlying the State’s obligation to inform the witness of the immunity conferred in the Grand Jury context. On the other hand, in this civil proceeding petitioner was assisted and advised by counsel present throughout the hearing, a situation which does not implicate the danger faced by a witness testifying before a Grand Jury, who does not have immediate access to counsel, of unwittingly forfeiting its privilege against self-incrimination.
 We conclude therefore that insofar as petitioner was not requested to waive his right to immunity before answering questions specifically, directly and narrowly relating to his official duties, his dismissal did not violate fundamental fairness or his privilege against self-incrimination. Moreover, there is substantial evidence in the record to support the Commissioner’s determination that petitioner willfully refused to answer the questions posed, and dismissal under the circumstances is not " ' "so disproportionate to the offense * * * as to be shocking to one’s sense of fairness” ’ ” (Matter of Pell v Board of Educ., 34 NY2d 222, 233, supra).
*163 Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be reversed, with costs, and the determination of respondent Commissioner reinstated. Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Judgment appealed from and order of the Appellate Division brought up for review reversed, etc.

. Petitioner was advised on three separate occasions by counsel for the Department that "[his] refusal to answer these questions will be considered further acts of insubordination” — that "the question is a direct order for an *158 answer” — and "that it is the Department’s position that your failure to answer that question in the face of a direct order constitutes insubordination.”

. In granting the petition the Appellate Division directed petitioner’s reinstatement with back pay and all benefits lost. The parties having stipulated to a judgment awarding petitioner $50,789.75 in back pay and benefits, the Commissioner appeals to us as of right (CPLR 5601 [d]) bringing up for review the order of the Appellate Division.