OPINION OF THE COURT
Stuart C. Cohen, J.
In this CPLR article 78 proceeding brought on behalf of all police officers in the City of New York, petitioners seek to permanently enjoin respondents from enforcing section 440 of the New York City Charter which established the new Civilian Complaint Review Board (CCRB). Petitioners primarily allege that section 440 fails to protect the constitutional privilege against self-incrimination of police officers called to testify before the Board. It is also alleged that section 440 is unconstitutionally vague and in derogation of the contractual rights of members of the police department.
Pursuant to Local Laws, 1993, No. 1 of the City of New York § 1, the City of New York abolished the existing CCRB and a new CCRB was established. While the existing CCRB was part of the police department, consisting of 12 members, six of whom were civilians appointed by the Mayor and six members appointed by the Police Commissioner, the new CCRB is independent of the police department. The new CCRB, comprised entirely of non-police-department personnel, contains 13 members: five members appointed by the Mayor, five members, one from each borough, designated by the City Council, and three members, each with experience as a law *911 enforcement professional, designated by the Police Commissioner.
Local Laws, 1993, No. 1 of the City of New York § 1 provides that the new CCRB shall employ civilian investigators to investigate all complaints (NY City Charter § 440 [C] [5]). The Board shall have the power to receive, investigate, hear, make findings and recommend action upon complaints by members of the public against members of the police department that allege misconduct involving excessive use of force, abuse of authority, discourtesy, or use of offensive language, including, but not limited to, slurs relating to race, ethnicity, religion, gender, sexual orientation and disability (NY City Charter § 440 [C] [1]). The Board, by majority vote of its members, may compel the attendance of witnesses and require the production of such records and other materials as are necessary for the investigation of complaints (NY City Charter § 440 [C] [3]).
The law also imposes upon the Police Commissioner the obligation to ensure that officers and employees of the department appear before and respond to inquiries of the Board and its civilian investigators — provided that such inquiries are conducted in accordance with department procedures for interrogation of members (NY City Charter § 440 [D] [2]).
In an interim order dated July 2, 1993, the Commissioner of the New York City Police Department directed that police department members fully cooperate in any CCRB investigation; report all pertinent facts, information and observations; and to answer fully and truthfully all questions. The order provides that failure to cooperate "shall be grounds for disciplinary action”. If an officer refuses to answer any questions a "supervisory/ranking officer” shall ascertain if the officer has been advised that any answer given may not be used against the member in a later criminal action; advise the officer that failure to answer any question will result in immediate suspension and the preparation of disciplinary charges; direct that the officer answer any question; and suspend said officer if said officer refuses to answer any question.
On August 4, 1993, the new CCRB met for the first time and passed rules and regulations. Section 1-10 of these rules specifically addresses the rights of the officers being interviewed. This section provides that an officer who is subject to a complaint or a witness in an investigation shall be given two business days’ notice prior to the date of the interview to *912 obtain and consult with counsel; that all persons interviewed may be accompanied by a representative, including counsel and a representative of a police department line organization. Furthermore, prior to the commencement of the interview, the following statement shall be read to such officer:
"You are being questioned as part of an official investigation of the [CCRB]. You will be asked questions specifically directed and narrowly related to the performance of your duties. You are entitled to all the rights and privileges guaranteed by the laws of the State of New York, the Constitution of this State and the Constitution of the United States, including the right not to be compelled to incriminate yourself and the right to have legal counsel present at each and every stage of this investigation.
"If you refuse to testify or to answer questions relating to the performance of your official duties, you will be subject to police department charges which could result in your dismissal from the Police Department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent Police Department charges.”
In this proceeding, petitioners allege that police officers testifying before the CCRB lose their privilege against self-incrimination because the legislation creating the new CCRB (NY City Charter § 440) does not expressly authorize the Board to grant use immunity. This argument is without merit. As demonstrated below, use immunity requires no specific statutory authorization. It flows directly from the Constitution and attaches automatically by operation of law whenever a public employee is compelled to testify about his job upon threat of dismissal. The responses are automatically cloaked with immunity and may not be used against the employee in a subsequent criminal prosecution.
The Fifth Amendment of the United States Constitution provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself’. This privilege applies not only to a defendant in a criminal prosecution, but also privileges a person "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings”. (Lefkowitz v Turley, 414 US 70, 77 [1973].)
*913 In Garrity v New Jersey (385 US 493 [1967]), the Supreme Court held that if a police officer is threatened with being fired from his job unless he answers questions in an investigation, his testimony is deemed "coerced” and may not be used against him in subsequent criminal proceedings. The Court ruled that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of [the] body politic.” (Supra, at 500.)
In Gardner v Broderick (392 US 273 [1968]), a New York City patrolman had been dismissed after refusing to sign a waiver of immunity when, pursuant to a subpoena, he appeared before a New York County Grand Jury. Noting that Gardner had been dismissed "for failure to relinquish the protections of the privilege against self-incrimination” (at 278), the Court held that the provisions of the New York City Charter — which authorized the termination of employment if an employee refused to waive immunity — were unconstitutional. The Court noted, however, that if Gardner "had refused to answer questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself * * * the privilege against self-incrimination would not have been a bar to his dismissal.” (Supra.)
In a companion case, Sanitation Men v Sanitation Commr. (392 US 280 [1968]), decided the same day as Gardner (supra), the Court again emphasized that public employees must "answer questions specifically, directly, and narrowly relating to the performance of their official duties on pain of dismissal” (supra, at 284) as long as they are not required to relinquish "the benefits of the constitutional privilege” (supra). In a subsequent decision in Uniformed Sanitation Men Assn. v Commissioner of Sanitation (426 F2d 619 [2d Cir 1970], cert denied 406 US 961 [1972]), the Second Circuit held that sanitation workers had use immunity by virtue of their being compelled to speak upon threat of loss of employment; use immunity did not need to be conferred by statute because it was inherent in the employee’s Fifth Amendment privilege against self-incrimination (supra, at 626).
The New York Court of Appeals relying on Garrity (supra) *914 held that when a public employee is compelled to give testimony under the threat of job loss, the responses are cloaked with use immunity; neither the responses nor any evidence which may be derived therefrom may be used against that employee in any subsequent criminal proceeding (Matter of Matt v LaRocca, 71 NY2d 154, 159 [1987]). The Court stated: "It would of course offend the guarantee against self-incrimination to require a public servant to answer questions — even those relating to the performance of such servant’s official duties — upon the threat of dismissal, and to make use of the incriminating statements in a subsequent criminal prosecution * * * The resulting immunity that attaches when a witness is ordered to answer such questions, therefore, flows directly from the Constitution, attaches by operation of law, and is not subject to the discretion of the employer.” (Supra.)
This authority applies to protect petitioners. When a police officer is called before the CCRB, questions will be asked about complaints by members of the public against the police department. The officer is required to respond to any questions and by so responding, might reveal information which could lead to criminal liability. If the officer refuses to answer the questions, disciplinary measures and possible discharge from the department may result. Therefore, when called before the CCRB, a police officer is given the choice between answering the questions of the Board or refusing to answer at the risk of being disciplined or discharged. The effect of such choice is to infringe upon one’s privilege against self-incrimination (Garrity v New Jersey, supra). Use immunity arises in this situation to prohibit the use in a subsequent criminal proceeding of any statement made by the officer before the CCRB. (Matter of Matt v LaRocca, supra.)
It is irrelevant that the new CCRB has no express statutory authority to grant immunity. It is not required by the Constitution. Where a public employee is compelled to testify under threat of dismissal, use immunity "attaches [automatically] by operation of law” and "flows directly from the Constitution”. (Matter of Matt v LaRocca, supra, at 159.) Use immunity requires no specific statutory authorization.
Petitioners next allege that section 440 impairs their contractual rights with respect to the interrogation of police officers before the CCRB. The impairment occurs, it is argued, by reason of the Board being comprised of non-police-department employees, which, according to petitioners, conflicts with *915 the confidentiality provisions of the collective bargaining agreement.
The "Guidelines for Interrogation of members of the Department” referred to in article XIX of the Collective Bargaining Agreement are set forth in Patrol Guide 118-9, which provides in part: "The questions and answers resulting from the interrogation conducted pursuant to this procedure are confidential. They are not to be revealed to any person or agency outside the department without prior written approval of the Deputy Commissioner — Legal Matters.”
Petitioners contend that by having non-police-department personnel as members of the CCRB, the Patrol Guide provisions are violated. However, the Collective Bargaining Agreement includes a "Bill of Rights”, at article XIX, which provides, in part, that: "The Guidelines for interrogation of members of the Department in force at the execution date of this Agreement will not be altered during the term of this agreement, except to reflect subsequent changes in the law”.
A "change in the law” is precisely what occurred here. Specifically, the City Charter "changes the law” with respect to interrogation of officers. Therefore, there is no impairment of contractual rights.
Petitioners next claim that section 440 is unconstitutionally vague because it does not expressly confer use immunity on police officers being questioned by the CCRB. This argument is without merit. Section 440 does not expressly set forth use immunity because it is unnecessary to do so — it is an inherent constitutional right that inures to any public employee who is compelled to testify under such circumstances. There is no affirmative obligation to inform officers of the automatic attachment of immunity (Matter of Matt v LaRocca, supra, at 162).
Accordingly, petitioners have not demonstrated any likelihood of ultimate success on the merits of their claims and therefore, injuncture relief is denied (Grant Co. v Srogi, 52 NY2d 496, 517 [1981]) and the petition is dismissed.