[1 NYS3d 887]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v ASAR SANAD, Defendant.

Criminal Court of the City of New York, Bronx County, January 28, 2015

**APPEARANCES OF COUNSEL**

*Robert T. Johnson, District Attorney (James Goward* of counsel), for plaintiff.

*Worth, Longworth, & London, LLP (Howard B. Sterinbach* of counsel) for defendant.

### OPINION OF THE COURT

ARMANDO MONTANO, J.

The People's motion for an order pursuant to CPLR 2221 (d) for leave to reargue this court's decision and order dated September 5, 2014 is granted. Upon reargument, this court adheres to its prior decision and order.

By decision and order dated September 5, 2014, this court granted, inter alia, defendant's motion for a *Huntley* hearing.

On February 15, 2013, defendant was an on-duty uniformed police officer assigned to the 40th Precinct. At approximately

2:45 a.m., defendant and Sergeant Miroslav Maric arrived at 489 East 142nd Street, Bronx, New York and observed Officers Pika and Rivera placing Jose Garcia under arrest. After speaking with Officers Pika and Rivera, defendant learned that Officers Pika and Rivera observed Jose Garcia repeatedly striking Carmen Rivera. Ms. Rivera declined to press charges against Mr. Garcia. Thereafter, Sgt. Maric assigned the arrest to defendant. Defendant then completed the necessary paperwork, transported Mr. Garcia to Central Booking for processing, and met with a Bronx County Assistant District Attorney to write up the case in the complaint room.

In response to questioning by the Assistant District Attorney, defendant told the Assistant District Attorney that she had observed Jose Garcia repeatedly strike Carmen Rivera about the face with a closed fist. A complaint was drafted in accordance with the facts provided by defendant for which defendant signed said complaint under penalties of perjury.

On or about March 21, 2013, defendant met with Assistant District Attorney (hereinafter ADA) Casey Boome to discuss the case. Defendant again stated that she had personally observed Jose Garcia strike Carmen Rivera. In their papers, the People imply that subsequent to dismissing the case against defendant Jose Garcia on March 21, 2013, ADA Boome then met with Sgt. Maric to discuss the details of the criminal case against said defendant. Sgt. Maric informed ADA Boome that neither he nor defendant had observed the assault. Instead, they had arrived on scene subsequent to the altercation. After conducting interviews with Officers Pika and Rivera and verifying records to determine who had been assigned to each police vehicle, ADA Boome notified defendant to appear at his office to further discuss the case. On the morning of August 15, 2013, defendant appeared at ADA Boome's office, as requested, and made the following statement: "I did not see the defendant Jose Garcia strike Carmen Rivera. I arrived at the scene with my sergeant in the second car[ ] after the assault was over."

The People assert that this court erred in granting defendant's motion for a *Huntley* hearing to determine the admissibility of her statement. The People argue that since defendant was not in custody or interrogated at the time this statement was given, she is not entitled to a *Huntley* hearing. The People characterize the conversation between ADA Boome and defendant as informal and non-confrontational. The People note that

(1) defendant's movements were in no way restricted during the conversation and (2) ADA Boome's questioning was investigatory rather than accusatory as his objective was to ascertain whether the criminal case against Jose Garcia was still viable.

In opposition, defendant argues that the court properly granted her request for a *Huntley* hearing. Contrary to the assertions made by the People, defendant asserts that on August 15, 2013, ADA Boome was questioning her as a criminal suspect. Defendant asserts that the issue to be determined is not whether defendant was in custody at the time she made the statement, but rather whether her statement was voluntarily made when she was required as a New York City Police Officer to speak with ADA Boome. Defendant cites *Matter of Matt v Larocca* (71 NY2d 154 [1987], *cert denied* 486 US 1007 [1988]) and *Gardner v Broderick* (392 US 273 [1968]) and argues that where a public employee is compelled to answer questions or face removal upon refusal to do so, the responses the public employee gives are shielded from use in a later criminal prosecution.

A motion for leave to reargue "shall be based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion, but shall not include any matters of fact not offered on the prior motion." (CPLR 2221 [d] [2].)

> " 'A motion for reargument, addressed to the discretion of the court, is designed to afford a party an opportunity to establish that the court overlooked or misapprehended the relevant facts, or misapplied any controlling principle of law. Its purpose is not to serve as a vehicle to permit the unsuccessful party to argue once again the very questions previously decided.' " (*Mangine v Keller*, 182 AD2d 476, 477 [1st Dept 1992], quoting *Foley v Roche*, 68 AD2d 558, 567 [1st Dept 1979].)

With respect to the timeliness of the instant motion, CPLR 2221 (d) (3) provides that a motion to reargue "shall be made within thirty days after service of a copy of the order determining the prior motion and written notice of its entry." In her papers in opposition, defendant concedes that she did not serve notice of entry of the September 5, 2014 decision and order. Since notice of entry of this court's decision and order has not been served, the time to file a motion for reargument has not

begun to run. As such, the instant motion is timely. (*See Zhi Fang Shi v Sanchez*, 36 AD3d 486 [1st Dept 2007].) However, even if the instant motion was untimely, this court still may consider the motion on its merits since "regardless of statutory time limits concerning motions to reargue, every court retains continuing jurisdiction to reconsider its prior interlocutory orders during the pendency of the action." (*Liss v Trans Auto Sys.*, 68 NY2d 15, 20 [1986]; *Profita v Diaz*, 100 AD3d 481 [1st Dept 2012].)

A defendant's oral or written statements are inadmissible at trial if they were made involuntarily. (CPL 60.45 [1].) A statement is involuntary if obtained either

> "[b]y any person by the use or threatened use of physical force upon the defendant or another person, or by means of any other improper conduct or undue pressure which impaired the defendant's physical or mental condition to the extent of undermining his ability to make a choice whether or not to make a statement" or "[b]y a public servant engaged in law enforcement activity or by a person then acting under his direction or in cooperation with him . . . in violation of such rights as the defendant may derive from the constitution of this state or of the United States." (CPL 60.45 [2] [a], [b] [ii].)

It is well settled that when an individual is taken into custody, the Fifth Amendment requires the police to administer *Miranda* warnings. (*Miranda v Arizona*, 384 US 436 [1966].)

> "In deciding whether a defendant was in custody prior to receiving his [*Miranda*] warnings, the subjective beliefs of the defendant are not to be the determinative factor. The test is not what the defendant thought, but rather what a reasonable man, innocent of any crime, would have thought had he been in the defendant's position." (*People v Yukl*, 25 NY2d 585, 589 [1969].)

A reasonable person in defendant's position, innocent of any wrongdoing, would not have believed she was in custody. Here, defendant was the arresting officer and a key witness in a criminal case, who was notified by the assigned Assistant District Attorney to report to his office for the purpose of preparing the case for trial. Defendant arrived at the District Attorney's office by her own transportation, her movements were not restricted, and there was no discussion of her being

detained for her conduct. It would be absurd to consider that a police officer is in custody for purposes of *Miranda* each time that officer is directed to appear at the District's Attorney's office in the furtherance of the officer's job duties.

■ While it is true that under both the New York Constitution and the Federal Constitution, a "statement made under threat of dismissal is protected by the privilege against self-incrimination and automatically immunized from use in criminal proceedings" (*People v Corrigan*, 80 NY2d 326, 329 [1992]), this court finds that defendant's reliance on *Matter of Matt v Larocca* (71 NY2d 154 [1987], *cert denied* 486 US 1007 [1988]) and *Gardner v Broderick* (392 US 273 [1968]) is misplaced. Under these cases, "what is proscribed as unconstitutional is to condition public employment upon a waiver of the privilege against self-incrimination." (*Matt*, 71 NY2d at 160.)

In *Garrity v New Jersey* (385 US 493 [1967]), a number of police officers were questioned by the New Jersey Attorney General's Office with respect to allegations of fixing traffic tickets. Prior to questioning, the officers were told that (1) anything they said might be used against them in a criminal proceeding; (2) they had the right to refuse to answer; but (3) the refusal to answer would subject them to removal from office. The officers complied and answered the questions. Some of these statements were used in subsequent criminal proceedings which resulted in convictions of the police officers. In reversing the convictions, the Supreme Court held that the statements were procured by way of coercion because the officers were given the choice "either to forfeit their jobs or to incriminate themselves" which amounted to no choice at all, but a selection of "the lesser of two evils." (*Id.* at 497-498.)

In *Gardner v Broderick*, a New York City Police Officer was called to testify before a grand jury investigating allegations of bribery and corruption among police officers. He was asked to execute a waiver of immunity. He was also explicitly told that failure to execute the waiver would result in dismissal. The officer refused to sign the waiver and was thereafter dismissed solely on that basis. In reversing the judgment which upheld his dismissal, the Supreme Court held, relying on *Garrity*, that a public employee could not be terminated solely for failing to waive a constitutionally guaranteed right.

However, courts have declined to apply *Garrity* in cases where the defendant was not faced with the choice between job loss and incrimination. In *People v Reed* (247 AD2d 900, 900

[4th Dept 1998]), the defendant, while under suspicion of misappropriating client funds as a social worker, made admissions during an investigatory interview. During the interview, the defendant was told that if she did not cooperate, it "would shed a certain kind of light on her in terms of what her role in this whole thing was." (*Id.*) In affirming the defendant's conviction for petit larceny and scheming to defraud, the Appellate Division, Fourth Department held that her admissions were not immunized. The Court reasoned that the defendant was not faced with "the Hobson's choice of either waiving her rights or facing immediate discharge if she did not." (*Id.*)

In *United States v Indorato* (628 F2d 711 [1st Cir 1980]), the defendant, a lieutenant with the Massachusetts State Police, was convicted of conspiracy to commit an offense against the United States, theft of property from an interstate shipment, and perjury. The defendant argued that certain statements made by him in response to questioning by his superiors were coerced and impermissibly introduced at trial. The court held that the defendant fell outside the ambit of *Garrity* as there was no overt threat of dismissal and a statute or ordinance mandating such a procedure. The court further refused to accept the defendant's argument that the threat of dismissal was implied since state departmental rules required his compliance with the lawful orders of superiors and provided for potential dismissal for a breach thereof. The court reasoned that "the subjective fears of [the] defendant as to what might happen if he refused to answer his superior officers [were not] sufficient to bring him within Garrity's cloak of protection." (*Id.* at 716.)

In the case at bar, defendant was never told that she would be dismissed if she refused to answer any questions. On the contrary, defendant was simply notified by the assigned Assistant District Attorney to come to his office to further discuss a criminal case in which she was a key witness. While it was implicit for defendant as a police officer to cooperate with the Assistant District Attorney on a case in which she played a pivotal role, she was never faced with the choice between waiving her rights or facing immediate discharge. Moreover, the Bronx County District Attorney's office was not defendant's employer. As such, neither ADA Boome nor the Bronx County District Attorney's office had the authority to terminate defendant's employment with the New York City Police Department. Defendant was not faced with the threat of job forfeiture if she refused to speak with ADA Boome. Although defendant asserts

that as a police officer she would have faced consequences for failing to appear at ADA Boome's office, her subjective fears as to what might happen are insufficient for her statement to be immunized pursuant to *Garrity* and its progeny.

Based on the foregoing, this court would find that defendant was not in custody for purposes of *Miranda* and her statement is not immunized under *Garrity*, which would obviate the need for a hearing. However, this court is constrained to follow the holding in *People v Weaver* (49 NY2d 1012 [1980]). This court is ever mindful of the fact that the New York Constitution can offer broader protections for its citizens than is afforded by the Federal Constitution, which sets the floor rather than the ceiling for an individual's rights. (*Hernandez v Robles*, 7 NY3d 338 [2006]; *People v P.J. Video*, 68 NY2d 296 [1986].) In *Weaver* (49 NY2d at 1013), the Court of Appeals held that "there *must* be a hearing whenever [the] defendant claims his statement[s] [were] involuntary no matter what facts he puts forth in support of that claim." (*See also People v Bingham*, 144 AD2d 682 [2d Dept 1988]; *Matter of Brian E.*, 206 AD2d 665 [3d Dept 1994].) In her original moving papers, defendant maintained that the statement attributed to her was involuntarily made because she was compelled to do so under threat of job forfeiture. In a motion to suppress a statement, all that is required to warrant a *Huntley* hearing is the mere claim that the defendant's statement was involuntary. Therefore, defendant's motion for a *Huntley* hearing is granted.

At the hearing, in order to prove that a defendant's statements are voluntary, the People "must show that the statements were not products of coercion, either physical or psychological, or, in other words, that they were given as a result of a 'free and unconstrained choice by [their] maker.' " (*People v Thomas*, 22 NY3d 629, 641 [2014] [citation omitted], quoting *Culombe v Connecticut*, 367 US 568, 602 [1961].) The hearing court will need to review the totality of the circumstances in order to determine whether defendant's statement was in fact involuntary. (*People v Anderson*, 42 NY2d 35 [1977].)

Accordingly, the People's motion for leave to reargue this court's September 5, 2014 decision and order is granted. Upon reargument, this court adheres to its previous decision and order.